CRYSTAL v HUBBARD

Docket No. 78-2189. Submitted June 4, 1979, at Lansing.—Decided
September 5, 1979. Leave to appeal applied for.

Jackie Lynn Hubbard, plaintiff's decedent, died when the automobile in which she was riding with her husband, defendant Steven C. Hubbard, collided with another vehicle operated by defendant Steven T. Komar. Larry Crystal, Mrs. Hubbard's father, was appointed administrator of her estate and brought a wrongful death action against defendants in the Genesee Circuit Court for, among other things, the personal losses sustained by Mrs. Hubbard's five surviving siblings, her mother and himself. Defendants objected to plaintiff's claims on behalf of the siblings and the trial court, Philip C. Elliott, J., allowed all claims to be submitted to the jury, which returned a verdict specifying nothing for the mother and an amount for decedent's father and for each of her five siblings, as well as for funeral expenses and pain and suffering. The court entered judgment on the aggregate amount. Defendants appeal. *Held:*

The words "next of kin" as employed by the wrongful death statute mean "nearest blood relation" and restrict the "class who, by law, would be entitled to inherit". Thus, siblings of a deceased who was survived by her parents may not recover under the wrongful death statute. Apart from a surviving spouse, no person not next of kin to a decedent may participate in an action for wrongful death.

Judgment vacated and cause remanded with instructions.

Torts — Wrongful Death — Statutes — Definitions — Next of Kin.

The words "next of kin" as employed by the wrongful death statute mean "nearest blood relation" and restrict the "class who, by law, would be entitled to inherit"; thus, siblings of a deceased who was survived by her parents may not recover under the wrongful death statute; apart from a surviving spouse, no person not next of kin to a decedent may participate

Reference for Points in Headnote
22 Am Jur 2d, Death § 47 *et seq.*

in an action for wrongful death (MCL 600.2922; MSA 27A.2922).

*Bebout, Potere, Cox, Hughes & Cadieux,* for plaintiff.

*Stiles, Fowler, Dudley & Tuttle,* for defendants.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

DANHOF, C.J. Jackie Lynn Hubbard died when the automobile in which she was riding with her husband, defendant Steven Hubbard, collided with another operated by defendant Komar. Ms. Hubbard's father was appointed administrator of her estate and brought this action under the wrongful death statute,[1] seeking recovery for the funeral and burial expenses for which the estate was liable, for the pain and suffering which preceded Ms. Hubbard's death shortly after the accident and for the personal losses sustained by Ms. Hubbard's five surviving siblings, her natural mother and himself. The trial was directed solely at the determination of damages, the defendants having admitted liability for the death.[2]

The defendants objected before trial to the plaintiff's claims for damages on behalf of the siblings, asserting that the statute allowed recovery only for the parents' injuries. The trial court allowed the plaintiff to prove and submit to the jury the claims of all the family members, devising and submitting to the jury a verdict form providing for specification of the amount of the verdict deemed

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCL 600.2922; MSA 27A.2922.

[2] The parties agreed that the husband's responsibility for the death precluded him from sharing in the administrator's recovery.

to represent the loss of each claimant. The verdict was rendered accordingly, the jury completing the form as follows:

### "FORM OF VERDICT

WE, THE JURY, FIND THE FOLLOWING DAMAGES:

| | |
|---|---|
| 1. Funeral and burial expense | $ 1,433.55 |
| 2. Reasonable compensation for the pain and suffering by Jackie Lynn Hubbard, while she was conscious during the time between her injury and her death | $10,000.00 |
| 3. Loss of society, companionship and nurture suffered by her father Larry Crystal as a result of his daughter's death | $25,000.00 |
| 4. Loss of society, companionship and nurture, as a result of her daughter's death suffered by her mother Delores Hess | $_____ |
| 5. Loss of society and companion ship as a result of their sister's death suffered by: | |
| Deborah Weis (sister) | $ 1,000.00 |
| Larry Wayne Crystal (brother) | $ 1,000.00 |
| Donald Crystal (brother) | $ 1,000.00 |
| Cindy Tucker (sister) | $20,000.00 |
| Kimberly Crystal (sister) | $20,000.00" |

Upon this verdict the trial court entered a single judgment for the plaintiff in the amount of $79,433.55, with interest and costs.[3] This appeal

---

[3] A post-trial order of *remittitur* reduced the amount of the award representing the loss of the father by $5,000. That order is not at issue in this appeal.

has preceded the certification of the judgment to the probate court for distribution.[4]

The research of the parties and of this Court has revealed no decision in which the right of siblings to participate in a wrongful death action has been defined. In deciding this matter, we bear in mind that the wrongful death statute is a remedial act intended to provide compensation to persons whose injuries are real but of a type not actionable at common law. See *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960), and *Thompson v Ogemaw County board of Road Comm'rs,* 357 Mich 482; 98 NW2d 620 (1959). We also note that, there having been no common law right of recovery in the survivors of a person wrongfully killed, the sole source of rights in such a case is the statute. *Courtney v Apple,* 345 Mich 223; 76 NW2d 80 (1956).

The form of the statute applicable to this action is that fixed by 1971 PA 65, which provides in pertinent part:

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, under all of the circumstances to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the

---

[4] See MCL 600.2922(2); MSA 27A.2922(2) and MCL 702.115; MSA 27.3178(185), now MCL 700.2222; MSA 27.5222.

society and companionship of the deceased. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total loss suffered by the surviving spouse and each of the next of kin of such deceased persons, as shown by the evidence. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws."

The parties have accurately identified *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957), as the authority most capable of illuminating the issue presented in this appeal.[5] In that case, the administratrix, widow of the decedent, brought an action under the statute on behalf of herself and the decedent's minor children. In the trial court, the decedent's financially dependent mother unsuccessfully sought to compel the administratrix to represent her claim along with those of the widow

---

[5] The changes wrought in the statute in the years since *MacDonald* was decided do not reduce the usefulness of that decision in resolving the question presented today.

and children. The action proceeded to a consent judgment between the administratrix and the defendant.

On appeal, the administratrix maintained that the decedent's mother was not his "heir at law" due to the survival of the wife and children,[6] was not entitled to share in the distribution of the proceeds of the action and, therefore, had no right to present her claims through the administratrix. The mother claimed that the right to participate was granted her by the statutory provision for distribution of the proceeds of the action to the "next of kin" of the decedent.

The case at bar adds to *MacDonald* the claims of brothers and sisters who, due to the survival of the decedent's natural parents, are neither heirs at law nor next of kin.

In *MacDonald,* the Court began its opinion with the observation that the wrongful death statute had been significantly amended less than one year after the court's reluctant decision of *In re Venneman's Estate,* 286 Mich 368; 282 NW 180 (1938).[7] Among the important changes the Legislature had made, the Court noted the following:

"(1) The words 'next of kin' were not mentioned in the act before amendment, and were inserted 5 times in the amended section.

"(2) Approximately the first half of the amended section does not discuss or provide for distribution and in this half there is no reference to heirs-at-law or next

---

[6] See MCL 702.92; MSA 27.3178(162).

[7] 1939 PA 297, effective 6/20/39. The amendment produced the version of the statute addressed in *MacDonald.*

In *Venneman,* the widow administratrix was forced to share the proceeds of a settled wrongful death action with the decedent's estranged son. The son, a product of a former marriage, had suffered no "pecuniary loss" from his father's death, but was entitled to recover because he was an "heir at law" of the decedent.

of kin and those entitled to damages are described as a '*class* (emphasis ours) who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.' The word 'class' was not used in the act before amendment.

"(3) That the title of the amended act adds the words 'to prescribe the measure of damages recoverable and the distribution thereof; and to repeal inconsistent acts.'

"(4) In the amended act when the words 'next of kin' are used, they are in each of the 5 occasions coupled with the word 'spouse,' as follows: 'surviving spouse and next of kin;' 'surviving spouse and all of the next of kin;' 'the surviving spouse and each of the next of kin;' 'surviving spouse and next of kin;' and 'surviving spouse and the next of kin.' Neither the words 'surviving spouse' or 'next of kin' are found in the act before amendment." 350 Mich 21, 26-27.

Approaching the critical issue in the case, the Court wrote:

"What does the term 'next of kin' signify? 51 CJS 453 answers this question as follows:

" 'Primarily, and under both the common law and the civil law, the phrase "next of kin" signifies nearest blood relation; and this is the technical, legal, and literal meaning of the term.'

"A note in 15 LRA 300 defines 'next of kin' by stating:

" 'The words "next of kin" mean blood relatives. *Jones v. Oliver,* 38 NC 369. * * *

" 'The words "next of kin" in a will mean the nearest blood relations and not all those who would take under the statute of distributions. *Fargo v. Miller,* 150 Mass 225 (22 NE 1003, 5 LRA 690); *Swasey v. Jaques,* 144 Mass 135 (10 NE 758, 59 Am Rep 65).'" 350 Mich 21, 31.[8]

---

[8] That the Court meant to employ in its analysis the civil law meaning of "next of kin" is illustrated by the contrasting use of that term in the concurring opinion of Mr. Justice BLACK's, who wrote:

"Any 'next of kin,' *i.e.,* blood relative, is a rightful beneficiary in such case provided he or she is shown to have been dependent in fact

Addressing the administratrix's contention that the statute employed "next of kin" so as to mean only "heirs at law" (an interpretation which would have produced no greater class of beneficiaries than that defined in the older version of the statute), the Court held:

"Appellees admit that when a layman uses the term 'next of kin' in his will he would 'be expected to refer to degrees of kinship and have reference to the meaning of the term according to the civil law,' but contend that an opposite result is reached when the term is used in the statute.

"We cannot agree with appellees' contention that 'heirs at law and next of kin are synonymous terms,' or that for this Court to rule otherwise would delete and make inoperative the words found in the first half of the amended section 'that such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.'

"The petitioning mother was of a class who would be entitled to inherit the personal property of the deceased had he died intestate. The fact that she would not inherit if he died intestate leaving a wife and children would not eliminate her from that class." 350 Mich 21, 32.

In the case at bar, the administrator argues that the effect of *MacDonald* is to define the class of persons entitled to participate in a wrongful death action so as to include all persons "who, by law, would be entitled to inherit the personal property of the deceased, had he died intestate" and relies upon the *MacDonald* Court's statement that "the fact that [the mother] would not inherit if [her

or law on the decedent when death occurred and is a member of the statutory 'class' from which, in the variant circumstances of succession, the inheritor or inheritors of the personal estate of one dying intestate are selected." 350 Mich 21, 34.

son] died intestate leaving a wife and children would not eliminate her from that class". The defendant points out that only the rights of a person who was next of kin to the decedent were before the Court in *MacDonald* and that the class of potential beneficiaries was "expanded" in that case only sufficiently to admit persons who were not the decedent's heirs at law but who were his next of kin.

We must decide in this appeal the question which *MacDonald* leaves unanswered: whether the statutory term "next of kin" fixes the *minimum* membership of "that class of persons who, by law, would be entitled to inherit the personal property of the decedent had he died intestate" or serves the additional function of excluding from class membership those persons not also claiming the civil law status of next of kin. The dispute brought before the Court in *MacDonald* required it to decide only that the first proposition was true.

It is clear, as the plaintiff argues, that the *MacDonald* Court employed "next of kin" as an aid to its interpretation of the crucial terms, "that class who, by law, would be entitled to inherit". If only this aspect of the MacDonald reasoning were brought to bear on the issue in the case at bar, we could easily conclude that "next of kin" serves *only* this function and is therefore to be viewed as fixing only the lower limit of the class of persons who may seek relief in actions of this kind.

However, we are constrained to note that the *MacDonald* Court was called upon by the intervening dependent mother only to release her from the "heir at law" limitation on her rights, which had apparently been carried by the lower court from the older version of the statute. We also note the Court's deliberate adoption of the civil law meaning of "next of kin" in contrast with Mr. Justice

BLACK'S preferred "blood relative" equivalent of that term. This deliberate resort to the civil law convinces us that while the "class of persons who, by law, are entitled to inherit" was "opened" by the legislative employment of "next of kin" in the same paragraph, that class was expanded only to include those persons who are next of kin according to the civil law meaning of the term. We are unable to find in the statute any words which can free "next of kin" of its ordinary restrictive meaning as that term had served in *MacDonald* to release from its confinement "that class of persons who, by law, are entitled to inherit". Thus we hold that, apart from the surviving spouse, no person not next of kin to the decedent may participate in an administrator's action under the statute. Ms. Hubbard's siblings not being her next of kin, the trial court erred in taking evidence of their losses and submitting to the jury the administrator's claims on their behalf.

That portion of the judgment representing the claims of the siblings is shown by the jury's verdict to total $43,000. Taking into account the unchallenged post-judgment *remittitur* of $5,000, the amount of the greatest judgment supported by the law is $31,433.55.[9]

The judgment of the circuit court is vacated, and the cause remanded for entry of judgment in the amount set forth above.

---

[9] The statute is silent on the propriety of such individualized jury "verdicts" as were employed in the case at bar. Clearly, such a statement from a jury can never be more than advisory. The trial judge is never released from his obligation to "advise the probate court *by written opinion*" of the proportion of losses suffered by each surviving next of kin. Nor is the probate court ever freed from its obligation to finally determine that apportionment. MCL 600.2922; MSA 27A.2922. Because the courts' duties of apportionment do not appear to be for the benefit of defendants or of administrators *qua* administrators, the trial court's practice can have done no harm to the parties before the court in the case at bar. *Cf., Hix v Besser Co,* 386 Mich 499; 194 NW2d 333 (1972).