## SCOTT v BURGER KING CORPORATION

Docket No. 78-3875. Submitted November 13, 1979, at Detroit.—Decided March 4, 1980.

Johnny Lee Scott was fatally shot while he was a patron at a restaurant owned by Burger King Corporation. His wife, Verna Scott, brought an action for damages for wrongful death against Burger King. Burger King, in turn, brought a third-party action against Vi-Six Security Agency, Inc., and Ted Crawford, an individual security officer. Johnny Lee Scott was also survived by his parents and several brothers and sisters. The parents and siblings filed a motion to intervene as plaintiffs in the wrongful death action. Their motion was denied by the Wayne Circuit Court, Joseph Burtell, J., and they appeal by leave granted. *Held:*

The wrongful death statute provides that damages may be recovered by those persons who would be entitled to inherit the personal property of the deceased had he died intestate. References in the statute to the "next of kin" include those persons who would inherit had the deceased died intestate and, therefore, include the deceased's parents and siblings as well as his surviving spouse and children. The motion to intervene by Johnny Scott's parents and siblings should have been granted.

Reversed and remanded.

1. NEGLIGENCE — WRONGFUL DEATH — NEXT OF KIN — STATUTES.

The phrase "surviving spouse and next of kin" as used in the wrongful death act refers to those persons who by law would be entitled to inherit the personal property of the deceased had he died intestate (MCL 600.2922; MSA 27A.2922).

2. NEGLIGENCE — WRONGFUL DEATH — NEXT OF KIN — STATUTES.

The parents and siblings of a decedent, as persons entitled to inherit the personal property of the decedent, are among the next of kin and are entitled to participate as plaintiffs in a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 22 Am Jur 2d, Death § 47 *et seq.*

[2] Wrongful death: brothers and sisters of deceased as beneficiaries within state wrongful death statute. 31 ALR3d 379.

wrongful death action arising from the death of the decedent (MCL 600.2922; MSA 27A.2922).

*Rifkin, Kingsley & Rhodes, P.C.* (by *Robert E. Laramie)*, for plaintiff.

*Peter R. Barbara & Associates, P.C.* (by *Frank G. Becker)*, for intervening plaintiffs.

Before: BRONSON, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

E. A. QUINNELL, J. Verna Scott, administratrix of the estate of her deceased husband Johnny Lee Scott, brought this action under the wrongful death statute, MCL 600.2922; MSA 27A.2922, for the benefit of herself and their minor child. The complaint alleged negligence on the part of defendant Burger King Corporation that resulted in the shooting of the decedent while a patron at one of the defendant's restaurants on January 8, 1977. In addition to his wife and child, the decedent was survived by his parents and siblings. The decedent's parents and siblings sought recognition from the administratrix as beneficiaries in the lawsuit, and subsequently moved to intervene as plaintiffs to pursue their claims when that recognition was not granted.[1] Plaintiff opposed the motion, which was denied by the trial court. We granted leave to consider the interlocutory appeal of the proposed intervenors. We reverse.

I. The question of the rights of the decedent's parents and siblings requires us to construe the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The statute requires that the named plaintiff be the personal representative of the deceased, and it is unlikely that the parents and siblings can technically be designated as parties plaintiff. However, the remedy sought by the "propose intervening plaintiffs" is sanctioned in *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957); see the opinion of Justice BLACK, writing for four concurring Justices.

wrongful death statute, which is the sole source of the cause of action. The pertinent subsection provides:

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, under all of the circumstances to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased. *Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto.* Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share

thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws." MCL 600.2922(2); MSA 27A.2922(2). (Emphasis added.)

In *Crystal v Hubbard,* 92 Mich App 240; 285 NW2d 66 (1979), a panel of this Court held that siblings of a decedent who was survived by spouse and parents could not recover damages since they were not "next of kin" of the decedent. If we were to follow *Crystal,* Johnny Scott's siblings would have no rights in the action.[2] We disagree, however, with the conclusion reached in that opinion.

The *Crystal* panel relied upon the decision of the Supreme Court in *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957). The decedent in *MacDonald* was survived by his wife and children and also by his mother, who was dependent upon him for support. The statute then in effect, CL 1948, 691.582; Stat Ann 1955 Cum Supp 27.712, detailed the types of damages available and added the following proviso: "Provided, however, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate." The next sentence began a discussion of the manner of distribution of the recovery: "The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse

---

[2] The trial court in the instant case also denied the parents' motion to intervene. Regardless of the effect of *Crystal,* however, the parents would be proper beneficiaries since they were next of kin to the decedent under all definitions. Both parents and children of the decedent stand in first-degree kinship to the decedent. The accepted authority of *MacDonald v Quimby, supra,* involved precisely this factual situation. Appellee's argument to the contrary notwithstanding, we agree with the *Crystal* panel that the 1971 changes in the statute do not affect the validity of the *MacDonald* analysis.

and next of kin who suffered such pecuniary injury and in proportion thereto." The Court noted the changes brought by the 1939 amendment to the act. Among other changes, this amendment added the "next of kin" language and added the word "class" to "(persons) who, by law, would be entitled to inherit". *MacDonald, supra,* 26-27. The Court decided that the amendment was intended to free the statute from the tight reins of the laws of intestacy and to expand the class of beneficiaries from those who were the decedent's heirs at the time of his death to those who could have been his heirs had the circumstances been different.

"We cannot agree with appellees' contention that 'heirs at law and next of kin are synonymous terms,' or that for this Court to rule otherwise would delete and make inoperative the words found in the first half of the amended section 'that such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.'

"The petitioning mother was of a class who would be entitled to inherit the personal property of the deceased had he died intestate. The fact that she would not inherit if he died intestate leaving a wife and children would not eliminate her from that class." *MacDonald, supra,* 32.

The Court held that the decedent's mother, as the next of kin according to civil law, could recover damages. *MacDonald, supra,* 31-32.

The *Crystal* Court properly characterized the issue of the rights of siblings, who are blood relations of the second degree, as remaining undecided after *MacDonald.*

"We must decide in this appeal the question which *MacDonald* leaves unanswered: whether the statutory

term 'next of kin' fixes the *minimum* membership of 'that class of persons who, by law, would be entitled to inherit the personal property of the decedent had he died intestate' or serves the additional function of excluding from class membership those persons not also claiming the civil law status of next of kin. The dispute brought before the Court in *MacDonald* required it to decide only that the first proposition was true." *Crystal, supra,* 248.

The Court concluded:

"This deliberate resort to the civil law convinces us that while the 'class of persons who, by law, are entitled to inherit' was 'opened' by the legislative employment of 'next of kin' in the same paragraph, that class was expanded only to include those persons who are next of kin according to the civil law meaning of the term. We are unable to find in the statute any words which can free 'next of kin' of its ordinary restrictive meaning as that term had served in *MacDonald* to release from its confinement 'that class of persons who, by law, are entitled to inherit' ". *Crystal, supra,* 249.

We believe this result was intended neither by the Legislature in adopting the statutory language nor by the *MacDonald* Court in deciding a case involving only a parent and not siblings. Our disagreement with the *Crystal* panel centers on the meaning of the phrase "next of kin". The phrase has been interpreted at least three different ways.

Black's Law Dictionary (4th ed, 1951):

"Next of kin. In the law of descent and distribution, this term properly denotes the persons nearest of kindred to the decedent, that is, those who are most nearly related to him by blood; but it is sometimes construed to mean only those who are entitled to take under the

statute of distributions, and sometimes to include other persons."

Anno: *Brothers And Sisters Of Deceased As Beneficiaries Within State Wrongful Death Statute,* 31 ALR3d 379.

Some courts, as did the *Crystal* panel, interpret the phrase as meaning the nearest blood relatives, computing degrees of kindred according to the strict rules of the civil law. Other courts interpret the phrase as being synonymous with heirs at law, a result forbidden by the *MacDonald* majority. Still other courts have adopted a somewhat less precise use which in effect encompasses persons who are neither heirs at law nor civil law next of kin, but who are related. For instance, in *Jones v Wittenberg University,* 534 F2d 1203 (CA 6, 1976), the Sixth Circuit Court of Appeals, applying Ohio law, affirmed a Death Act judgment in favor of the father and one sister of an unmarried, childless decedent. The Ohio statute provided that wrongful death actions are to be brought "for the exclusive benefit of the surviving spouse, the children and other next of kin of the decedent". The court did not discuss the meaning of "next of kin", but the result in the case is to expand the term beyond both "heirs at law" and the civil law definition.

We do not consider significant any difference in the *MacDonald* opinions in the use of "next of kin", and fail to find the "deliberate resort to the civil law" noted by the *Crystal* panel. The case involved the rights of the mother only; she was clearly entitled to participate under either the 5-member KELLY opinion or the 4-member BLACK opinion. Further, Justice EDWARDS signed both opinions, which accounts for the 9 concurring votes from an 8-member court.

II. In what sense then did the 1971 Michigan

legislature intend the term to be used? We have sought and have been unable to find any legislative history or pre-enactment analysis. The critical language of the statute itself reads as follows:

"Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto."

The former sentence as interpreted in *MacDonald* expresses the class of beneficiaries, *i.e.* potential (as distinct from actual) inheritors of personal property, who are entitled to recover damages. We do not believe the next sentence was intended to limit that class. If the Legislature had intended to give with one hand and take with the other, it could have done so much more explicitly.[3] Read within the structure of the paragraph, the latter sentence and all later references to "surviving spouse and next of kin" concern the manner of distribution of the damages. The "surviving spouse and next of kin" are to recover those damages owing to them individually, certain creditors of the estate are to be paid, and the remainder of the estate passes by the laws of intestacy. Under our reading of the statute, "surviving spouse and next of kin" is a shorthand expression—albeit and inartful one—for "such person or persons who, by law, would be entitled to inherit the personal property of the deceased had he died intestate".

A contrary interpretation would lead to results

[3] As a remedial statute, the wrongful death act is to be construed liberally. See *Wycko v Gnodtke,* 361 Mich 331, 339; 105 NW2d 118 (1960).

inconsistent with an express policy of the statute, which is to compensate persons for the loss of the pecuniary support, society, and companionship of a negligently killed decedent. The 1971 amendment to the act expressly added loss of society and companionship to the items of damages, thereby enacting the case law that had begun with *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960), which had interpreted "pecuniary loss" to include companionship. The cases are very clear that companionship is found in the mutual society and protection existing in the family unit. Judge HOL-BROOK, writing for this Court in *Westfall v Venton,* 1 Mich App 612; 137 NW2d 757 (1965), expressed this concept well:

> "The award of damages for loss of companionship caused by the unlawful death of an adult daughter and an adult son, ruled as proper in the *Currie [Currie v Fiting,* 375 Mich 440; 134 NW2d 611 (1965)] and *Reisig Cases [Reisig v Klusendorf,* 375 Mich 519; 134 NW2d 634 (1965)], together with the quote from the *Heider Case [Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965)] indicates to this Court, that the unlawful death of any member of a family unit *with provable loss of companionship present,* is actionable and included in the term 'pecuniary injury' contained in the death act as construed in the *Wycko, Currie, Heider* and *Reisig Cases.*
>
> "A family unit, including all of its members, whether living under the same roof or not, is still a family unit. As a rule, parents as they grow older acquire more wisdom and appreciation for their children, grandchildren, and the family unit. This enables them to exert through their concern, love, and companionship valuable guidance to the other members of the family, and strengthen the effective service of the family as a unit. The unlawful taking of the life of one of the members of a well-knit and close family unit, where love, and concern, abounds, severs this unit, with resulting pecu-

niary injury to the survivors. For such loss the survivors have an action under the death act." *Westfall, supra,* 620. (Emphasis in original.)

In *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965), *cert dismissed as improvidently grtd,* 385 US 362; 87 S Ct 532; 17 L Ed 2d 427 (1966), the Court reversed a jury award for the death of a minor child on the grounds of error in the finding of liability, but Justice ADAMS addressed the question of damages and who could recover them in his dissenting opinion. Justice ADAMS noted:

"In the case of 8-year-old David Heider, the jury awarded damages of $125,000. It is asserted that this sum is excessive, against the clear preponderance of the evidence and contrary to its great weight. Appellant states:
" 'Mrs. Heider, with the $125,000, at her present age would be able to purchase an annuity which would pay her a guaranteed monthly income of $455 for her lifetime.'
"The loss of companionship in David's case runs not only to the father and mother but also to a younger brother and sister. The amount of damages recoverable in actions for death by wrongful act is one peculiarly within the province of the jury. Taking into account the total family relationship, the probable dependency of the mother upon David, and the loss to the family group of the life of David over a useful lifetime, we do not find the verdict excessive." *Heider, supra,* 515-516.

Loss of society, companionship, and pecuniary support from a decedent should not turn on the vagaries of survival of a person more closely related by blood to a decedent than another who sustained a loss. Consider the case of a decedent who lived with and supported his sibling for many years. If this decedent happened to have a child,

the sibling would have no rights under the act, according to the *Crystal* Court. Yet it would be abundantly clear that the sibling, and possibly the child as well, would have suffered a loss. In a similar situation in which no child existed, the sibling could recover. Such a result would be nothing more than capricious and we cannot believe it was intended by the Legislature.

We are aware that our interpretation may lead to problems of proof and difficulty in the management of lawsuits. Whatever problems may have existed were clearly resolved by the *Crystal* trial judge and jury. Such difficulties, however, inhere in the nature of compensation for loss of society and companionship and must not interefere with implementation of what we perceive to be the intent of the Legislature. Justice SMITH, writing for the Court in *Wycko v Gnodtke, supra,* explained that we should be undeterred by the possibility of logistical difficulties.

"What, then, is the pecuniary loss suffered because of the taking of the child's life? It is the pecuniary value of the life. We are aware, of course, that there are those who say that the life of a human being is impossible to value, that although we will grapple mightily with the value of the life of a horse, of a team of mules, we will stand aloof where a human is concerned and assign it no value whatever. This kind of delicacy would prevent the distribution of food to the starving because the sight of hunger is so sickening. But we cannot shirk this difficult problem of valuation. In the cases coming to us a life has been taken and it is our duty, as best we can, to put a fair valuation on it. In so doing, we will keep in mind that the act is remedial in its character and our duty is to construe it liberally in favor of the beneficiaries." *Wycko, supra,* 338-339. (Footnotes omitted.)

In short, decedent's parents and siblings are

among those persons entitled to inherit his personal property. MCL 702.93; MSA 27.3178(163), currently MCL 700.106; MSA 27.5106. As such, they are also among his next of kin. Therefore, they are entitled to participate in this wrongful death action. Whether any of them individually sustained a loss for which damages must be paid under the wrongful death act is a question for determination by the trier of fact.

Accordingly, we reverse and remand. Costs to appellants.