ROBERTS v GATEWAY MOTEL OF GRAND RAPIDS, INC

Docket No. 74437. Submitted May 7, 1985, at Grand Rapids.—Decided
    September 16, 1985. Leave to appeal denied, 424 Mich —.

Lois Roberts, personal representative of the estate of Lloyd C.
    Roberts, deceased, brought a wrongful death action in the Kent
    Circuit Court against Gateway Motel of Grand Rapids, Inc. The
    deceased, plaintiff's eight-year-old son, was in the care of his
    natural father, Lloyd Chambers, when he drowned in defen-
    dant's swimming pool. At trial, plaintiff sought to exclude
    certain adverse references to Chambers' character on the
    ground that Chambers was not being represented by plaintiff.
    The trial court, George V. Boucher, J., ruled that Chambers
    was one of the real parties in interest and that plaintiff must
    represent his interests. The jury returned a verdict of no cause
    of action and judgment was entered. Plaintiff appealed. *Held:*

    1. Defendant's counsel engaged in conduct that denied plain-
    tiff a fair trial when he ignored the evidentiary rulings of the
    court in a manner that evidenced a studied purpose to inflame
    or prejudice the jury or a wanton or careless disregard of the
    same, inevitable result.

    2. None of the other claims of error merit reversal in and of
    themselves. However, on retrial, Chambers shall be given no-
    tice of the action as required by statute, and, if he responds,
    the court should grant him an opportunity to intervene and, if
    he does, should determine whether there is a conflict of interest
    and whether plaintiff may be required to represent Chambers'
    interests.

    Reversed and remanded with instructions.

1. APPEAL — REMARKS OF COUNSEL — JURY TRIALS.
    The Court of Appeals will reverse a jury verdict because of
    allegedly prejudical remarks of counsel at trial where the

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Appeal and Error §§ 895, 896.
    Am Jur 2d, Trial §§ 280 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Argu-
    ment of Counsel; Bias or Prejudice.
[2] Am Jur 2d, Death §§ 194-202.
    See the annotations in the ALR3d/4th Quick Index under Death.

remarks complained of evidence a studied purpose to inflame or prejudice the jury or a wanton or careless disregard of the same, inevitable result.

2. Torts — Wrongful Death — Parties.

The personal representative need not be presumed to represent the interests of next of kin whose interests might conflict with interests of other next of kin where the personal representative raises the claim of conflict before trial; in such a case, the trial court must examine the merits of the claim of conflict and determine whether the plaintiff can adequately represent the interests of the estate and the other relatives who respond to notice of the action (MCL 600.2922; MSA 27A.2922).

*William S. Stern, P.C.* (by *William S. Stern*), for plaintiff.

*Tolley, Fisher & Verwys, P.C.* (by *Sharon R. Brinks*), for defendant.

Before: Shepherd, P.J., and R. M. Maher and W. R. Peterson,* JJ.

Shepherd, P.J. A jury returned a verdict of no cause of action on plaintiff's wrongful death claim arising from the drowning of her eight-year-old son in defendant's pool. We reverse and remand for a new trail because of the failure of defendant's attorney to abide by rulings of the trial court on several evidentiary matters. We also conclude that upon retrial plaintiff, as personal representative of her son's estate, shall not be forced to represent the interests of the boy's natural father, Lloyd Chambers, if the trial court determines that a conflict exists between the interests of the boy's mother and father.

The decedent was in Chambers' care when he was found at the bottom of defendant's pool. At the time of trial, Chambers was in prison in Texas. He did not testify at the trial, by deposition or

---

* Circuit judge, sitting on the Court of Appeals by assignment.

otherwise. Plaintiff's testimony contained some favorable recollections concerning the relationship between Chambers and the decedent. However, plaintiff's attorney sought exclusion of certain adverse references to Chambers' character, arguing that Chambers was not his client. The trial court ruled that under the wrongful death statute, MCL 600.2922(2); MSA 27A.2922(2), the personal representative must represent the interests of all those with a potential entitlement to damages, *i.e.,* "that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate". *Id.* (prior to amendment by 1985 PA 93). The trial court concluded that, since Chambers was such a person, plaintiff was forced to represent his interests, and evidence of the true nature of his relationship with the deceased was relevant. The court instructed the jury that Chambers was one of the "real parties in interest".

Plaintiff argues, and we agree, that defense counsel's multiple violations of the trial court's evidentiary rulings denied her a fair trial.

Before trial, the court ruled that plaintiff's marital status and the "illegitimacy" of her two remaining children were irrelevant. Despite the ruling, defense counsel asked plaintiff on cross-examination if it was true that she "[had] never been married". Plaintiff's attorney objected. With the jury still present, defense counsel responded that he thought the court's ruling only applied to "the two daughters" (*i.e.,* plaintiff's other children). In our view, the ruling of the trial court was clear and nothing in that ruling justified counsel's interpretation.

In addition, defense counsel repeatedly violated the trial court's exclusion of evidence that Chambers was a pimp.

Also, the trial court had excluded any reference

to the fact that Chambers was in a Texas prison at the time of trial. Defendant recalled plaintiff to testify at the close of plaintiff's proofs, and proceeded as follows:

"Miss Roberts, before I ask you any questions, because of the Court *[sic]* has ruled earlier on several matters of admissible evidence, I want to set the ground rules, all right?

"*A.* (Nodding head)

"*Q.* Would you answer out loud so the Court Reporter—

"*[PLaintiff's Attorney]:* Your Honor, I believe this is supposed to be a question and answer-type thing. I don't know that [defense counsel] is supposed to set the ground rules. I believe that is for the Court to do, and I believe he is to ask questions and she is to answer. I don't know that he is supposed to testify and set the ground rules.

"*[Defense counsel]:* I'm trying to be very careful so as not to elicit testimony this Court has previously said should *not* be elicited, and what I want to ask Mrs. Roberts is to please listen very carefully to my questions. * * *

"I want you to answer only yes or no, because they are yes or no questions, unless you are requested or allowed to provide additional information. Is that satisfactory with you ma'am?

"*A.* Uhhuh.

"*Q.* Only a yes or no answer.

Do you know where Lloyd Chambers is or was—

"*[Plaintiff's attorney]:* Objection—

"*[Defense counsel]:* —during the week of this trial?

"*[Plaintiff's attorney]:* Objection. That is what we talked about. We talked, and the Court has admonished defense counsel about that, and, once more, he is ignoring the Court's order."

The trial court sustained plaintiff's objection. Defendant now argues that no explicit reference was made to Chambers' actual whereabouts. This

is true, but defense counsel's vague reference to matters excluded by the trial court may have left the jurors with the impression that they were receiving less than the full story. We do not believe that an attorney should, in the jury's presence, "set the ground rules" for cross-examination if, by doing so, he implies that the witness's answers conceal the full substance of the matter, and that information has been excluded by the trial court. Otherwise, a party may succeed in injecting prejudicial innuendo into the consciousness of the jurors. This alone would not justify reversal but when we consider the other more serious violations we are left with a clear impression that plaintiff was denied a fair trial.

The defense attorney succeeded in presenting to the jury information which was, as the trial court had ruled, more prejudicial than probative. MRE 403. His conduct had the effect of distracting the jury's attention from the relevant issues in the case. Plaintiff objected to most of the acts of misconduct, but we would order a new trial even if no objection had been raised. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982). See, also, *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339, 352-354; 273 NW2d 75 (1978); *Wayne County Bd of Road Comm'rs v GLS LeasCo, Inc,* 394 Mich 126; 229 NW2d 797 (1975). Our review of the record leaves us with the firm conclusion that defense counsel acted either with "a studied purpose to inflame or prejudice [the] jury", *Anderson v Harry's Army Surplus, Inc,* 117 Mich App 601, 615; 324 NW2d 96 (1982), *lv den* 417 Mich 1074 (1983), or with a wanton or careless disregard of the same, inevitable result. Defense counsel argues that these errors were made in good faith. We decline to pass judgment on that issue because of our finding that the errors, what-

ever their motivation might have been, deprived plaintiff of a fair trial.

Plaintiff's three remaining claims of attorney misconduct are lacking in merit. An argument regarding the location of a room key was harmless, in light of defendant's admission that there was no pass-key lock on the gate leading to the pool. The motel registration card, containing Chambers' alias, could have caused no prejudice to plaintiff because the jury was aware of the alias from other testimony. Lastly, the volume of defense counsel's voice during bench conferences is impossible to discern from the record. Plaintiff objected only once to the defense attorney's alleged loudness. We conclude no prejudice resulted.

Next, plaintiff argues that the trial court erred by forcing her to represent Chambers' interests. According to plaintiff, this ruling seriously prejudiced her position. It opened the door to inquiry concerning Chambers' character, the infrequency of his contacts with the decedent, and the impact of these facts on plaintiff's case. By being forced to represent Chambers' interests she would have to defend his character and his relationship to the boy when, in fact, she might be better served by arguing to the jury that her damages should be either considered separately or, at least, not reduced by any adverse conclusions the jury might reach on the subject of Chambers' damages.

At the time of trial, the wrongful death statute, MCL 600.2922(2), provided in part as follows:

"Every such action shall be brought by, and in the names of, the personal representative of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, under all of the circumstances to those persons who may be entitled to such damages when recov-

ered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto. * * *."

Defendant correctly observes that Chambers falls within the definition of "next of Kin", *id.,* adopted by the Supreme Court in *Crystal v Hubbar,* 414 Mich 297; 324 NW2d 869 (1982). See also, *May v City of Grosse Pointe Park,* 122 Mich App 295, 298-300; 332 NW2d 411 (1982); *Scott v Burger King Corp,* 95 Mich App 694; 291 NW2d 174 (1980).[1] Therefore, he was entitled to claim damages in this wrongful death action. However, this does not resolve the issue of whether plaintiff was automatically obligated to assert his interests at trial, even though it might do harm to her cause. We conclude that the Legislature did not intend to force the personal representative to bear weight (in the form of an unsavory, absentee father) which might sink the entire wrongful death action.

We do not mean to say that the personal representative has the authority to waive the claims of a "next of kin". Unless the plaintiff raises a claim of conflict before trial, the court may presume that

---

[1] The father also qualifies under the definition recently mandated by the Legislature. MCL 600.2922(3); MSA 27A.2922(3) (1985 PA 93).

the plaintiff represents the interests of all those with an entitlement to claim damages. We note that, under the newly-amended statute, the personal representative must serve a copy of the complaint and notice of the right to claim damages upon all of the next of kin. MCL 600.2922(2); MSA 27A.2922(2), as amended by 1985 PA 93. Those failing to respond may be barred from claiming any portion of the proceeds. MCL 600.2922(8); MSA 27A.2922(8).

We hold only that, when the plaintiff in a wrongful death action claims that representation of the interests of one or more of the "next of kin" will do harm to the plaintiff's cause, the trial court must examine the merits of that claim and determine whether plaintiff can adequately represent the interests of both the estate and the other relatives who respond to the notice now statutorily required. If the claim has merit, such "next of kin" must be given an opportunity to intervene in the action. *Scott, supra;* MCR 1985, 2.105, 2.209. The personal representative will not be obligated to represent the interests of those who do not respond. Those who choose to intervene may be required by the court to proceed with separate counsel if a conflict of interest is found to exist. Thus, the personal representative will not be forced to dilute or destroy the strength of the plaintiff's case by mandatory representation of every potential intestate heir. *Crystal v Hubbar, supra.* At the same time, the same potential intestate heir will be given an opportunity to establish a loss under the wrongful death statute, MCL 600.2922. See *Crystal v Hubbard, supra,* pp 316-317; *MacDonald v Quimby,* 350 Mich 21, 33; 85 NW2d 157 (1957).

The potential conflict to which we refer is one which affects the conduct of the trial. We express

no opinion regarding the potential conflicts inherent in the procedure for distribution of the proceeds of the wrongful death action. MCL 600.2922; MSA 27A.2922, MCL 700.222(d); MSA 27.5222(d). Our concern here is only for the fairness of the trial itself, not the proceedings after trial. There may be, however, a relationship between the two conflicts in a given case. Counsel are therefore admonished to call all conflicts to the court's attention before trial so that the court may make an appropriate order governing the conduct of trial. We can envision a situation where the claims of the heirs are found to be so antagonistic that the interests of justice would require separate trials. See MCR 2.505(B). That would be a matter for the exercise of the sound discretion of the court.

Our conclusion is consistent not only with the purposes of the wrongful death statute, but also with the Code of Professional Responsibility. Under DR 5-105, subds (A) and (B), an attorney may not undertake or continue multiple representation if the exercise of his professional judgment "will be or is likely to be adversely affected". See, *GAC Commercial Corp v Mahoney Typographers, Inc*, 66 Mich App 186, 190; 238 NW2d 575 (1975); 7 Am Jur 2d, Attorneys at Law, § 184, pp 233-234 (citations omitted). Whether an attorney can adequately protect the interests of the estate and all the next of kin will depend upon analysis of their claims and the facts of the case. In many wrongful death cases, no conflict of interest exists by virture of simultaneous representation of both a personal representative and all of the surviving relatives. *Hurt v Superior Court of Arizona*, 124 Ariz 45; 601 P2d 1329 (1979).

Returning to the present case, plaintiff argues on appeal that her interests conflicted with those of Chambers. However, on direct examination,

plaintiff gave testimony which contained favorable references to the relationship between Chambers and his deceased son. We would not order a new trial in these circumstances, since it appears that plaintiff attempted to enhance the possible award of damages by describing Chambers' relationship with the child in favorable terms. Plaintiff could not have it both ways. The trial court acted properly in this case. Furthermore, counsel for plaintiff never called the conflict to the court's attention before trial, so that the court could resolve the problem in advance of trial. For this reason also we would not view this as an independent ground for reversal under the circumstances of this case.

We have ordered a new trial because of the conduct of defense counsel at trial. On remand, if, after receiving the required notice of the pending action,[2] Chambers does not respond, plaintiff need not represent his interests. If he responds, the trial court shall grant him an opportunity to intervene. The court will then determine whether there is a conflict of interest and whether plaintiff may be required to represent Chambers' interests.

Reversed and remanded for new trial and other proceedings consistent with this opinion.

Costs to plaintiff.

_____

[2] The amendments to the wrongful death statute apply to "matters *pending on* or filed after [their] effective date". 1985 PA 93, § 2 (emphasis added). The governor approved the legislation on July 10, 1985. The amendments "take immediate effect".