CRYSTAL v HUBBARD

Docket No. 63831. Argued November 13, 1980 (Calendar No. 4).—
    Decided October 5, 1982.

Larry Crystal, as administrator of the estate of Jackie Lynn
    Hubbard, deceased, brought an action for wrongful death
    against Steven C. Hubbard, husband of the deceased who was
    driving the car in which Jackie Hubbard was killed as a result
    of an automobile accident, and against Steven T. Komar, the
    driver of the other vehicle involved in the collision. The plain-
    tiff sought damages for funeral and burial expenses, the dece-
    dent's pain and suffering, and the loss of society and compan-
    ionship by the decedent's five siblings, her father, and her
    mother. A jury returned a special verdict in the plaintiff's
    favor, specifying the amount of loss sustained with respect to
    each category, and the Genesee Circuit Court, Philip C. Elliott,
    J., entered judgment on the verdict. The Court of Appeals,
    Danhof, C.J., and V. J. Brennan and Carroll, JJ., concluded
    that the wrongful death act permitted only actual heirs at law
    and next of kin to seek recovery and that the words "next of
    kin" mean "nearest relation", and vacated that portion of the
    award for the losses of the decedent's siblings (Docket No. 78-
    2189). The plaintiff appeals.

    In an opinion by Justice Ryan, joined by Justices Kavanagh,
    Williams, Levin, Fitzgerald, and Moody, the Supreme Court
    *held:*

    The siblings of a deceased person may recover damages for
    loss of society and companionship under the wrongful death act
    even though the decedent is survived by a spouse and parents
    so that the siblings cannot take by intestate succession.

    1. The wrongful death act provides that the class of persons

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 22 Am Jur 2d, Death § 58.
    Brothers and sisters of deceased as beneficiaries within wrongful
        death statute. 31 ALR3d 379.
[2, 3, 6, 8, 9] 22 Am Jur 2d, Death § 47 *et seq.*
[4] 22 Am Jur 2d, Death §§ 123, 126, 135.
    Parents' loss of child's society and companionship as element of
        damages for injury to child. 69 ALR3d 553.
[5, 10] 22 Am Jur 2d, Death §§ 47, 48, 58.

who would be entitled to inherit the personal property of a decedent had he died intestate and who suffer injury because of a wrongful death may share in the distribution of damages recovered in proportion to their injury. The legislative history of the act and case law indicate that this "class" of persons includes a surviving spouse and next of kin who suffer injury. Next of kin means those persons who are eligible to inherit had the decedent died intestate and who can prove a compensable injury.

2. The Legislature never intended to limit the right to seek damages for wrongful death to the actual "heirs at law" defined as the nearest of kin actually surviving a decedent who would be entitled to inherit under the laws of descent and distribution. Rather, the "class" of persons entitled to inherit includes at least the surviving spouse and the next of kin who suffered injury. The former death act provided that the proceeds recovered in a wrongful death action would be distributed according to the laws of intestate succession rather than according to the damage suffered by a beneficiary. After the Supreme Court so held, the Legislature amended the damages and distribution portion of the act to authorize distribution of an award only to those persons who are actually injured and entitled to seek recovery. The Supreme Court interpreted this "class" of persons entitled to seek recovery to encompass the broader theoretical group of potential heirs and not only actual heirs identifiable at the time of a decedent's death.

3. Prior wrongful death legislation employed the term "pecuniary loss" to describe the only compensable loss which could be suffered by a person other than the decedent. At one time pecuniary loss was consistently associated with the notions of dependency and actual lost monetary support. Dependency began, in case law, to take on the role of defining who was entitled to seek damages, and relationship became a less important criterion. Although the Legislature re-enacted and revised the death statute during this period, it did not delete or explain the term "pecuniary injury", seemingly approving the Court's interpretations. Then the harshness of the restrictive financial dependency interpretation of "pecuniary injury" was recognized by the Supreme Court, and the concept was broadened to encompass the loss of "mutual society and protection" or "companionship". Thereafter the Legislature deleted the words "pecuniary injury" and added "loss of society and companionship" as one element of damages in the wrongful death act. Because the Legislature did not limit the view expressed in case law that the loss of companionship could run to any

potential intestate heir rather than an actual heir, it would appear to have acquiesced in that interpretation.

4. Next of kin does not mean *nearest* relative, but *any* relative who can demonstrate injury. The Legislature abandoned the former limitations of financial dependency upon the decedent and pecuniary injury as grounds for seeking a wrongful death recovery and broadened the grounds, deleting the words "pecuniary injury" and adding "loss of society and companionship". The wrongful death act, with this emphasis, appears designed to compensate for the destruction of family relationships, the relationships assumed to exist among family members identified under intestate laws as potential takers, and not merely first-degree kin.

Reversed.

Chief Justice Coleman dissented. She wrote that the siblings of a decedent who dies intestate are not entitled to inherit his personal property under the laws of intestacy where the decedent is survived by a spouse, child, or parent. Thus, under the wrongful death act, which defines the class of persons entitled to seek damages as those entitled to inherit under the laws of intestacy, the siblings of a decedent are not entitled to recover where the decedent is survived by a spouse, child, or parent.

1. The wrongful death act defines the persons entitled to recover damages resulting from the wrongful death of another as the class of persons who, by law, would be entitled to inherit the personal property of the decedent had he died intestate. The Revised Probate Code provides that a spouse, child, or parent of a decedent who dies intestate takes the intestate estate before any siblings or others of a more remote degree of kinship. The language of the act defining the class entitled to recover for a wrongful death as those entitled to inherit had the decedent died intestate gives no reason to suppose that it is referring to anything but the actual situation existing at the time of a decedent's death. It does not mean that persons who under some conceivable set of circumstances might take under the laws of intestacy are entitled to recover in a wrongful death action.

2. No cause of action for wrongful death existed under the common law; it was provided by statute. The original wrongful death act provided for recovery for pecuniary loss to be distributed to the widow and next of kin of a decedent under the laws of intestate succession. The act was later amended to allow recovery by a husband who, not being a blood relative of his wife, was precluded from seeking recovery under the act. Further amendments limited recovery to persons who actually

suffered pecuniary loss, rather than allowing recovery solely according to the laws of intestate succession, and expanded the grounds for recovery to include the loss of the society and companionship of the deceased. The term "next of kin" is used in the statute merely as a label for a class explicitly defined elsewhere in the statute as those entitled to inherit under the laws of intestacy, and thus its precise meaning is not an issue. It was incorrectly construed by the Supreme Court in 1957 to allow recovery by a mother who had been supported by her son, even though he was survived by a wife and children. The mother was not in the class of persons entitled to inherit under the laws of intestacy because of the surviving wife and children, but the Court ignored the clear statutory language. Adhering to that construction cannot be justified by assuming acquiescence on the part of the Legislature in re-enacting the statute with the same language because legislative inaction concerning one clearly erroneous decision should not be treated with the same deference as that accorded legislative action, and also because the acquiescence should not be assumed to apply beyond the specific holding of the case.

3. Given the express statutory limitation that damages for a wrongful death are recoverable only by those persons entitled to inherit under the laws of intestate succession, it is not for the Court to question the wisdom of failing to extend further the benefits for loss of society and companionship. The unique nature of damages for lost society and companionship make it far more difficult to assert that the clearly necessary line demarcating those entitled to damages rationally should have been drawn elsewhere. The question was for the Legislature and was clearly answered by the statute at issue.

92 Mich App 240; 285 NW2d 66 (1979) reversed.

OPINION OF THE COURT

1. DEATH — WRONGFUL DEATH — SIBLINGS — STANDING.

The siblings of a deceased person may recover damages in a wrongful death action for loss of society and companionship even though the decedent is survived by a spouse and parents (MCL 600.2922[2]; MSA 27A.2922[2]).

2. DEATH — WRONGFUL DEATH — DESCENT AND DISTRIBUTION.

The persons entitled to share in the distribution of the recovery in a wrongful death action are members of the class who would be entitled to inherit the personal property of the deceased had he died intestate (MCL 600.2922[2]; MSA 27A.2922[2]).

3. DEATH — WRONGFUL DEATH — DESCENT AND DISTRIBUTION.

    The class of persons entitled to share in the distribution of the amount recovered in a wrongful death action encompasses the theoretical group of potential heirs under the laws of intestate succession who can prove a compensable injury and not merely the actual heirs identifiable at the time of the decedent's death (MCL 600.2922[2]; MSA 27A.2922[2]).

4. DEATH — WRONGFUL DEATH — DAMAGES — LOSS OF COMPANION-SHIP.

    The former limitation of compensable loss in a wrongful death action to pecuniary loss was eliminated by the Legislature and broadened to include the loss of society and companionship (MCL 600.2922[2]; MSA 27A.2922[2]).

5. DEATH — WRONGFUL DEATH — NEXT OF KIN — WORDS AND PHRASES.

    The term "next of kin" as used in the wrongful death act to designate that class of persons who are entitled to share in the recovery for a wrongful death does not mean "nearest" relative, but includes any relative who can demonstrate compensable injury (MCL 600.2922[2]; MSA 27A.2922[2]).

6. DEATH — WRONGFUL DEATH — DAMAGES — DESCENT AND DISTRIBUTION.

    The Legislature, by including loss of society and companionship as one of the elements of recovery under the wrongful death act, appears to have intended to provide compensation for the destruction of the relationships assumed to exist among members of the deceased's family who are identified as potential takers under the laws of descent and distribution and not merely first-degree kin (MCL 600.2922[2]; MSA 27A.2922[2]).

DISSENTING OPINION BY COLEMAN, C.J.

7. DEATH — WRONGFUL DEATH — SIBLINGS — STANDING.

    *The siblings of a decedent may not recover damages in a wrongful death action for loss of society and companionship where the decedent is survived by a spouse, child, or parent (MCL 600.2922[2]; MSA 27A.2922[2]).*

8. DEATH — WRONGFUL DEATH — DESCENT AND DISTRIBUTION.

    *The persons entitled to share in the distribution of the recovery in a wrongful death action are members of the class who would be entitled to inherit the personal property of the deceased had he died intestate (MCL 600.2922[2]; MSA 27A.2922[2]).*

9. Death — Wrongful Death — Standing — Descent and Distri-
   bution — Words and Phrases.

> The language of the wrongful death act which defines the class of
> persons entitled to recover for a wrongful death as those
> entitled to inherit the personal property of the decedent had he
> died intestate means those persons actually entitled to inherit
> at the time of the decedent's death and not persons who, under
> some conceivable set of circumstances not in existence, might
> be entitled to inherit (MCL 600.2922[2]; MSA 27A.2922[2]).

10. Death — Wrongful Death — Next of Kin — Words and
    Phrases.

> The term "next of kin" as used in the wrongful death act was
> intended to act as a label to refer to the constituency of the
> class of persons, apart from a spouse, explicitly identified in the
> act as those who are entitled under the laws of intestacy to
> inherit the personal property of a decedent; it was not intended
> to mean any blood relative who can demonstrate compensable
> injury (MCL 600.2922[2]; MSA 27A.2922[2]).

*John D. Cadieux* for plaintiff.

*Stiles, Fowler & Tuttle* (by *Larry D. Fowler*) for
defendants.

RYAN, J. We are required in this case to address
the difficult question whether, in a wrongful death
action, the deceased's siblings may recover dam-
ages for loss of the society and companionship of
their sister.

We hold that they may.

Jackie Lynn Hubbard died when the automobile
driven by her husband, defendant Steven Hub-
bard, in which she was riding, collided with an-
other operated by defendant Steven T. Komar. Ms.
Hubbard's father was named administrator of her
estate, and he filed this action under the wrongful
death provisions of MCL 600.2922; MSA 27A.2922.
His complaint sought damages for funeral and
burial expenses, for Ms. Hubbard's pain and suffer-

ing preceding her death, and for the personal losses of society and companionship sustained by Ms. Hubbard's five surviving brothers and sisters, her father and her mother.

The defendants admitted liability, and the case was tried to a jury on the issue of damages. At trial, defendants objected to plaintiff's claims on behalf of Ms. Hubbard's siblings, asserting that the statute precluded them from recovering. The trial judge disagreed, permitted the plaintiff to submit evidence of the loss suffered by all family members and submitted a special verdict form to the jury which was returned after having been completed as follows:

"FORM OF VERDICT
"WE, THE JURY, FIND THE FOLLOWING DAMAGES:

| | |
|---|---|
| "1. Funeral and burial expense | $ 1,433.55 |
| "2. Reasonable compensation for the pain and suffering by Jackie Lynn Hubbard, while she was conscious during the time between her injury and her death | $10,000.00 |
| "3. Loss of society, companionship and nurture suffered by her father Larry Crystal as a result of his daughter's death | $25,000.00 |
| "4. Loss of society, companionship and nurture as a result of her daughter's death suffered by her mother Delores Hess | $_____ |
| "5. Loss of society and companionship as a result of their sister's death suffered by: | |
|     Deborah Weis (sister) | $ 1,000.00 |
|     Larry Wayne Crystal (brother) | $ 1,000.00 |
|     Donald Crystal (brother) | $ 1,000.00 |
|     Cindy Tucker (sister) | $20,000.00 |
|     Kimberly Crystal (sister) | $20,000.00" |

In conformance with this verdict, a judgment of $79,433.55 was entered in plaintiff's favor.[1]

Defendants appealed, claiming 1) that the damages awarded in item 5 of the verdict form are not permitted under § 2922(2); 2) that use of a special verdict form apportioning damages among individuals is precluded by the apportioning provisions of § 2922(2); and 3) that the $10,000 award for pain and suffering was excessive.

As to defendants' first claim, the Court of Appeals concluded that § 2922(2) permitted only actual heirs at law and *nearest* of kin to seek recovery for a wrongful death and that since Ms. Hubbard's siblings were related under civil law only in the second degree, while her parents were first-degree kin, the plaintiff's judgment must be reduced by $43,000, the amount awarded to Ms. Hubbard's siblings.

In the dispositional part of its published opinion,[2] the Court of Appeals stated:

"That portion of the judgment representing the claims of the siblings is shown by the jury's verdict to total $43,000. Taking into account the unchallenged post-judgment *remittitur* of $5,000, the amount of the greatest judgment supported by the law is $31,433.55.[9]

"[9] The statute is silent on the propriety of such individualized jury 'verdicts' as were employed in the case at bar. Clearly, such a statement from a jury can never be more than advisory. The trial judge is never released from his obligation to 'advise the probate court by *written opinion*' of the proportion of losses suffered by each surviving next of kin. Nor is the probate court ever freed from its obligation to finally determine that apportionment. MCL 600.2922; MSA 27A.2922. Because the courts' duties of apportionment do not appear to be for the benefit of defendants or of administrators *qua* administrators, the trial court's practice can have done no harm to the parties before the court in the case at bar. *Cf. Hix v Besser Co,* 386 Mich 499; 194 NW2d 333 (1972)." 92 Mich App 249.

[1] Defendants succeeded in obtaining a post-trial order of remittitur reducing the $79,433.55 award by $5,000. That order is not at issue in this case.

[2] *Crystal v Hubbard,* 92 Mich App 240; 285 NW2d 66 (1979).

As is evident from the quoted footnote, the Court of Appeals considered defendants' second claim of error and rejected the contention that the trial judge erred in submitting the special verdict form to the jury.

By the same token, the Court of Appeals statement that "the amount of the greatest judgment supported by law is $31,433.55" is at least an implicit indication of the Court's rejection of defendants' claim that the $10,000 award for pain and suffering was excessive and unreasonable.

Defendants have done nothing to pursue either of these latter two claims since the submission of their brief to the Court of Appeals. Contrary to the assertions made in their brief to this Court, nothing in our order granting leave precluded them from advancing those claims here.[3] Because they are not asserted here, we do not consider these claims.[4]

I

We turn then to decide whether the brothers and sisters of a person suffering death wrongfully at the hands of another are entitled to seek damages for loss of society and companionship in cases

[3] The substance of our order granting leave to appeal contained no restrictive language. It reads in relevant part:

"On order of the Court, the application for leave to appeal is considered, and it is granted. The parties are directed to *include among the issues to be briefed:* are brothers and sisters of the deceased entitled to damages for loss of society and companionship under Michigan's wrongful death act where both parents of the deceased are still living?" (Emphasis added.)

[4] Defendants' failure to make application for leave to appeal or to cross-appeal on these issues precludes our review. GCR 1963, 852.2 and 853.2.

where the decedent has left a surviving spouse and
parent.

Resolution of the issue begins with an interpre-
tation of the meaning of the following statutory
passage from § 2922:

"(2) Every such action shall be brought by, and in the
names of, the personal representatives of such deceased
person, and in every such action the court or jury may
give such damages, as, the court or jury, shall deem fair
and just, under all of the circumstances to those per-
sons who may be entitled to such damages when recov-
ered including damages for the reasonable medical,
hospital, funeral and burial expenses for which the
estate is liable and reasonable compensation for the
pain and suffering, while conscious, undergone by such
deceased person during the period intervening between
the time of the inflicting of such injuries and his death.
The amount of damages recoverable by civil action for
death caused by the wrongful act, neglect or fault of
another may also include recovery for the loss of the
society and companionship of the deceased. *Such person
or persons entitled to such damages shall be of that
class who, by law, would be entitled to inherit the
personal property of the deceased had he died intestate.
The amount recovered in every such action shall be
distributed to the surviving spouse and next of kin who
suffered injury and in proportion thereto.* Within 30
days after the entry of such judgment, the judge before
whom such case was tried or his successor shall certify
to the probate court having jurisdiction of the estate of
such deceased person the amount and date of entry
thereof, and shall advise the probate court by written
opinion as to the amount thereof representing the loss
suffered by the surviving spouse and all of the next of
kin, and the proportion of such total loss suffered by the
surviving spouse and each of the next of kin of such
deceased person, as shown by the evidence. After pro-
viding for the payment of the reasonable medical, hospi-
tal, funeral and burial expenses for which the estate is
liable, the probate court shall determine as provided by

law the manner in which the amount representing the total loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws." MCL 600.2922(2); MSA 27A.2922(2). (Emphasis added.)

Our focus is directed primarily toward the emphasized damage entitlement and distribution language, creating a right to seek damages on behalf of that "class who * * * would be entitled to inherit * * * had [the deceased] died intestate" and providing for distribution of damages to the "surviving spouse and next of kin" who suffered injury "and in proportion thereto".

The primary and generally understood meaning of that critical statutory language, construed in light of the effect of its practical application taken together with our assessment of the historical development of § 2922, and the case law construing its evolving provisions, including the legislative reaction thereto, lead us to conclude that the Legislature's purpose would be defeated by the Court of Appeals interpretation of § 2922. We are convinced that the Legislature never intended, in a case such as this one, to limit the right to seek damages for wrongful death to the actual "heirs at law" by which is meant those persons who are the nearest of kin actually surviving decedent who would be entitled to inherit pursuant to our law of descent and distribution.

A satisfactory answer to the stated issue is not plainly evident merely upon examination of the naked and somewhat opaque language of the statute. The critical language quoted and emphasized is abstruse and uninstructive, for although it iden-

tifies the persons who are entitled to damages for
the wrongful death of another as "the class" who,
by law, would be entitled to inherit had the dece-
dent died intestate, it provides no enlightenment
to determine *when* that class is to be identified.
Does the statute itself establish the class? In other
words, should the language be interpreted as es-
tablishing, at the time of enactment, a class of
persons entitled to seek recovery which includes
all those who, under the countless varying possibil-
ities which might exist in the future at the time of
a decedent's wrongful death, would be eligible to
inherit under Michigan's intestacy laws? If that is
the case, Ms. Hubbard's brothers and sisters are
entitled to the recovery awarded to them for Ms.
Hubbard's death. Or does the statute mean that
the "class" named in the statute is left open to be
defined only in the future at the actual time of
decedent's death and depending upon the particu-
lar legal relationship of the surviving relatives in
a particular case? If that is the case, Ms. Hub-
bard's surviving parents alone would be entitled to
seek damages.

## A

The search for an answer to these questions is
not benefited by resort to the expressions "surviv-
ing spouse" and "next of kin" which immediately
follow the statute's use of the term "class" and are
repeated throughout the statute's distribution pro-
visions. Alone or in context, those terms, without
more, are unenlightening.

We are convinced that the statutory language in
question, construed in the light of its legislative
history and read against the illuminating back-
ground of this Court's decisions, means that the
"class" entitled to seek damages includes at least

the "surviving spouse and next of kin" to whom distribution was ordered in this case.

We conclude, first of all, that the Legislature intended that the term "class" includes *at least* "the surviving spouse and next of kin who suffered injury" as a result of the wrongful death of another. We think that much is plain from the Legislature's reaction in 1939 to the decision in *In re Venneman's Estate,* 286 Mich 368; 282 NW 180 (1938), in amending the death act, 1939 PA 297, in a way clearly designed to authorize the distribution of an award to the individual who actually suffered a pecuniary loss as a result of the wrongful death.[5]

In *Venneman,* the deceased's adult son by a former marriage, who made no claim of pecuniary injury, was entitled to share half of a $4,000 settlement paid to the surviving widow. The prior statute, which was in effect at the time *Venneman* was decided, provided:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the

---

[5] Section 2 of the 1939 act provided:

"Sec. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death."

death of the person injured, and although the death
shall have been caused under such circumstances as
amount in law to felony.

\* \* \*

"Every such action shall be brought by, and in the
names of, the personal representatives of such deceased
person, *and the amount recovered in every such action,
shall be distributed to the persons and in the propor-
tions provided by law in relation to the distribution of
personal property left by persons dying intestate;* and in
every such action the jury may give such damages as
they shall deem fair and just, with reference to the
pecuniary injury resulting from such death, to those
persons who may be entitled to such damages when
recovered." 1929 CL 14061, 14062. (Emphasis added.)

In a unanimous opinion for the Court in *Venne-
man,* Justice NORTH interpreted this statute as
first requiring a determination of the amount of
the pecuniary injury resulting from a wrongful
death, then requiring distribution of that amount
to intestate heirs without regard to actual injury.
As Justice ADAMS pointed out some time later in
his dissent in *Breckon v Franklin Fuel Co,* 383
Mich 251, 282; 174 NW2d 836 (1970):

"In effect, the Court determined [in *Venneman]* that
the damages recovered under the provisions of the
death act as then in force were to be distributed among
the beneficiaries not according to damage suffered by
each of them but according to the proportions fixed by
the statute of descent and distribution."

As indicated, in apparent response to the per-
ceived injustice of the result in that case, the
Legislature, in 1939, amended the damages and
distribution portion of § 2922 to authorize distribu-
tion of an award only to those persons actually
injured by a wrongful death and entitled to seek a
recovery.

If we were now to construe the "surviving spouse and next of kin" entitled *to the distribution* of any injury award as consisting of a category of persons different than those entitled *to seek* wrongful death damages—the "class who * * * would be entitled to inherit * * * had [the deceased] died intestate"—we would be resurrecting a dichotomy between those entitled to generate a wrongful death award and those entitled to its distribution, which was abrogated by legislation in 1939.

Therefore, we are inclined to believe that the expression "next of kin", as used in the statute, was intended by the Legislature to mean such persons within the eligible "class" as can prove a compensable injury.

That is not the end of our task, however, because the expression "next of kin" is an inexact, even ambiguous phrase. Does it mean nearest relatives or all relatives? The ambiguities inherent in the expressions "class" and "next of kin" as contextually employed by the Legislature in § 2922(2) requires us to turn elsewhere to discern the will of the Legislature.

**B**

All parties and the Court of Appeals recognize the importance of what was said in *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957), as bearing on the proper interpretation of § 2922(2). We find that opinion to be of major significance to the resolution of the issue presented in this case.

Plaintiff claims that *MacDonald* clearly "negated the contention that recovery in a wrongful death action is limited * * * to *qualifying* [as opposed to potential] 'heirs at law' ", since that Court permitted the decedent's mother to intervene in the wrongful death action despite the survival

of the decedent's spouse and children. He assigns
special significance to the passage by Justice
KELLY in *MacDonald* which states:

"The petitioning mother was of a class who would be
entitled to inherit the personal property of the deceased
had he died intestate. The fact that she would not
inherit if he died intestate leaving a wife and children
would not eliminate her from that class." 350 Mich 32.

While at first glance the Court's statement
seems confusing, even contradictory, its meaning
becomes clearer when considered in light of the
specific issue facing the *MacDonald* Court and
indeed facing us in this case, *viz.,* what is the
frame of reference which defines the category of
persons the Legislature has called "the class * * *
entitled to inherit the personal property of the
deceased had he died intestate"? Is "the class" a
universal legal concept intended by the Legisla-
ture to mean the broadest group of persons legally
authorized to inherit the property of an intestate
deceased in a theoretical case, or only those per-
sons who, by reason of the fortuitous circum-
stances of the size and composition of a particular
family and the legal relationship of its members,
are actually eligible to inherit the deceased's prop-
erty to the exclusion of other relatives lesser
ranked in the table of descent and distribution?

Writing for the majority in *MacDonald,* Justice
KELLY plainly was of the view that "the class"
meant the broader, theoretical group of potential
heirs. Since, in that case, the deceased's mother
was a member of that category, she was entitled to
attempt to prove her pecuniary loss, despite being
actually excluded from the category of those enti-
tled to inherit her son's property because of the
happenstance in that case of the existence of a
*closer* heir, the deceased's wife.

Justice KELLY went on to write:

"There is no ambiguity in the words of the statute which provide 'the amount recovered in every such action for pecuniary injury resulting from such death *shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereof.'* * * *.

"Nor is there ambiguity in the provision that 'the judge before whom such case was tried * * * shall certify to the probate court * * * the amount thereof representing the total pecuniary *loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person.'* "* (Emphasis in original.) 350 Mich 32-33.

Having so concluded, Justice KELLY found at least two compelling reasons to justify the decision to recognize the petitioner-appellant's claim:

First, decedent's survivors in that case, besides his wife, were his children and his mother, all of whom qualify as first-degree kin.[6] Thus, under *MacDonald's* specific facts, there was no need to consider whether "next of kin" means nearest relative or all relatives included in our laws of descent and distribution.[7] Second, Justice KELLY recognized that the "next of kin" distribution language of § 2922(2) was written into the statute in response to *Venneman* and was intended to ensure that distribution was made to those within the

---

[6] According to civil law, the degree of kinship between A and B is computed by counting the intervals from A through A's lineal descendants or ancestors to that ancestor or descendant common to A and B and then back to B. Thus, as between cousins, the degree of kinship would be four, between siblings, two, between uncle and nephew, three, and so on.

[7] Under our intestacy laws, not *all* relatives are potential intestate heirs. MCL 700.106; MSA 27.5106 which identifies potential intestate heirs excludes one's great-grandparents and their issue as potential takers of intestate property as well as all lineal ancestors and their issue beyond great-grandparents.

"class" who were actually damaged by the wrongful death. Therefore, having found the decedent's mother to be in the "class" entitled to seek damages, the Court concluded that she was a "next of kin" for purposes of distribution of an award attributable to her loss.

We do not agree with the Court of Appeals characterization of *MacDonald* as involving

"the Court's deliberate adoption of the civil law meaning of 'next of kin' in contrast with [separately concurring] Mr. Justice BLACK's preferred 'blood relative' equivalent of that term",

and its conclusion

"that while the 'class of persons who, by law, are entitled to inherit' was 'opened' by the legislative employment of 'next of kin' in the same paragraph, that class was expanded only to include those persons who are next of kin according to the civil law meaning of the term." 92 Mich App 248-249.

Nowhere in *MacDonald* did the Court expressly adopt a "nearest relative" interpretation of "next of kin". The opinion refers to both possible meanings of "next of kin"; that is, *nearest* relative or simply relative, but does not clearly adopt or approve one meaning in preference to the other, probably because such a choice was not necessary to the decision. Similarly, there is no basis to conclude that the *MacDonald* Court interpreted the "class" as one of actual intestate heirs "opened" by the legislative employment of "next of kin". Instead, the majority opinion merely concluded that the mother was not eliminated from the statutory "class" simply because of the survival of decedent's wife and children. Such a conclusion can only be understood as a finding that the "class" is one of potential heirs of the intestate's property, not actual heirs only identifiable at the time of decedent's death.

Concurring separately in *MacDonald,* Justice
BLACK wrote:

"Any 'next of kin,' *i.e.,* blood relative, is a rightful
beneficiary in such case provided he or she is shown to
have been dependent in fact or law on the decedent
when death occurred and is a member of the statutory
'class' from which, in the variant circumstances of
succession, the inheritor or inheritors of the personal
estate of one dying intestate are selected." 350 Mich 34.

It is apparent that Justice BLACK interpreted the
majority opinion as opening the door to *any*
"blood" relative, as he put it, who could demon-
strate the appropriate pecuniary injury. That
same interpretation can be attributed to Justices
TALBOT SMITH and VOELKER, who signed the con-
curring opinion, as well as to Justice EDWARDS
who signed both the majority opinion and Justice
BLACK's opinion.[8]

We are in agreement with the *MacDonald*
Court's assessment of the meaning of the statutory
language there and here in issue, and the views
expressed by visiting Court of Appeals Judge
QUINNELL when, in *Scott v Burger King Corp,* 95
Mich App 694, 701; 291 NW2d 174 (1980), he
wrote:

"[The class] as interpreted in *MacDonald* expresses
the class of beneficiaries, *i.e.,* potential (as distinct from
actual) inheritors of personal property, who are entitled
to recover damages. * * * Read within the structure of
the paragraph, the [sentence first referring to] and all
later references to 'surviving spouse and next of kin'

---

[8] We are satisfied that despite his use of the familiar expression
"blood relative", Justice BLACK and the Justices who signed his
opinion did not intend to exclude lawfully adopted children from the
category of "rightful beneficiar[ies]" to which reference is made in the
concurring opinion, since then, as now, adopted children inherit as if
born to the adoptive parents. See MCL 700.110; MSA 27.5110.

concern the manner of distribution of the damages. The 'surviving spouse and next of kin' are to recover those damages owing to them individually, certain creditors of the estate are to be paid, and the remainder of the estate passes by the laws of intestacy. Under our reading of the statute, 'surviving spouse and next of kin' is a shorthand expression—albeit an inartful one—for 'such person or persons who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.' "

While obedient application of the doctrine of stare decisis alone would justify our adherence to the *MacDonald* Court's holding as we understand it, in order to determine who is entitled to seek wrongful death damages in the present case, we have further, and we think, compelling reasons for approving the Court's holding in *MacDonald* and reaching the decision we do in this case.

## C

In the first place, we share Justice KELLY's personal observation concerning the 1939 amendment to § 2922(2):

"The amendment was brought about because of the *Venneman* decision, *supra,* which brought into focus the injustice of taking from the surviving wife part of the damages collected and dividing said damages with a son of the deceased by a former marriage who did not suffer pecuniary damages because of the tortious act.

"It is impossible for the writer of this opinion to conclude that in meeting such injustice the legislature created another injustice—namely, to hold blameless, as far as damages are concerned, one who brought to his death a son who was contributing to the support of his mother." 350 Mich 33.

A generalized view of fundamental notions of distributive justice alone does not support the view

that the Legislature intended to permit any potential intestate heir to establish a loss under our wrongful death provisions. We discern that intent as well from the historical development of this state's wrongful death legislation and the irrationally arbitrary results of a contrary interpretation.

Before 1971, all forms of our wrongful death legislation employed the term "pecuniary injury" to describe the only compensable loss which could be suffered by a person other than the decedent. Until 1960, it was a term consistently associated with notions of dependency and actual lost monetary support or maintenance occasioned by the wrongful death.[9] It is safe to say that the 1939 amendments which first used the terms "class" and "next of kin", and which undoubtedly were a reaction to the perceived unfairness of *Venneman* where a non-dependent son was found entitled to share in the $4,000 settlement made with the surviving widow, re-emphasized the need to show some kind of financial dependency before a surviving spouse or next of kin could recover for the wrongful death.

Dependency arising out of financial support was the historical key to recovery of a "pecuniary loss". "Dependency" became such an important concept in this Court in understanding what constituted a pecuniary injury that it began to take on the added role of defining *who* was entitled to seek damages for wrongful death.[10] On two occasions Justice BLACK cited *Poff v Pennsylvania R*

[9] See, for example, *In re Olney's Estate,* 309 Mich 65; 14 NW2d 574 (1944); *Grimes v King,* 311 Mich 399; 18 NW2d 870 (1945); and *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957).

[10] For a brief history detailing part of the judicial struggle with the wrongful death statute, see Justice ADAMS' dissent in *Breckon v Franklin Fuel Co,* 383 Mich 251, 280; 174 NW2d 836 (1970). That dissent was adopted as the law in Michigan in *Smith v City of Detroit,* 388 Mich 637, 649; 202 NW2d 300 (1972).

*Co,* 327 US 399; 66 S Ct 603; 90 L Ed 749 (1946), to
emphasize that the degree of relationship was a
less important criterion for establishing a right to
seek wrongful death damages than dependency
between related individuals.[11] In his view, depen-
dency was the controlling factor,[12] and he used *Poff*
to support that view. In *Poff,* the United States
Supreme Court interpreted the Federal Employers
Liability Act, which provided that the employer's
liability, in the case of an employee's death, runs
" 'to his or her personal representative, for the
benefit of the surviving widow or husband and
children of such employee; and, if none, then of
such employee's parents; and, if none, then of the
next of kin dependent upon such employee' ". The
deceased left surviving him as kin two sisters, a
nephew, and a cousin, of whom only the cousin
was dependent on him. Justice Douglas, speaking
for the majority, reversed the Second Circuit Court
of Appeals and held that within the class "next of
kin", Congress had not intended to distinguish
between degrees of kinship but meant to entitle
any *dependent* kin to seek recovery so long as
there were no survivors in the preferred classes.
Again, the fact of dependency defined the right to
recovery.

Justice BLACK's reliance on *Poff* is illustrative of
the prevailing judicial understanding that the leg-
islative purpose in using the term "pecuniary

[11] Justice BLACK first cited *Poff* in his separate concurrence in
*MacDonald* which gained the approval of Justices TALBOT SMITH and
VOELKER as well as Justice EDWARDS, who also signed the lead
opinion.

The second citation to *Poff* occurred in Justice BLACK's majority
opinion in *Breckon v Franklin Fuel Co,* 383 Mich 251, 273; 174 NW2d
836 (1970), which marked a short-lived return from *Wycko v Gnodtke,*
361 Mich 331; 105 NW2d 118 (1960), to the restrictive financial
dependency interpretation of pecuniary injury.

[12] See the footnote on page 37 of Justice BLACK's concurrence in
*MacDonald.*

injury" to define compensable losses was to compensate financially dependent kin.[13] Given that prevailing and highly restrictive understanding of "pecuniary injury" and the fact that after 1939 and before 1971, despite a number of legislative reenactments and revisions of the death statute,[14] the Legislature never deleted or explained the term, we are led to believe that the Legislature never intended to preclude any financially dependent relative from seeking damages for the wrongful death of his benefactor.

The harshness of the restrictive financial dependency interpretation of "pecuniary injury" was recognized and judicially abandoned in *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960), when the Court upheld a $14,000 jury award to the parents of a wrongfully killed minor son. While it marked neither the beginning nor the end of judicial debate over the appropriateness of attributing to the Legislature agreement with the broader judicial interpretation of "pecuniary injury",[15] *Wycko* did represent, for the first time, an interpretation of "pecuniary injury" broad enough to encompass the loss of "mutual society and

[13] The prevalence of this view is indicated by the agreement of Justices TALBOT SMITH, VOELKER, and EDWARDS in *MacDonald,* and of Justices BRENNAN, DETHMERS, and KELLY in *Breckon* with Justice BLACK, and of Justices ADAMS and T. M. KAVANAGH, who in the dissent in *Breckon,* at page 296, expressly agreed with Justice BLACK'S view in *MacDonald.*

[14] For a more comprehensive examination of legislative action and inaction, see the discussion by Justice ADAMS in his dissent in *Breckon,* 383 Mich 291-295.

[15] For an insight into the considerable disagreement on this point see: *Courtney v Apple,* 345 Mich 223; 76 NW2d 80 (1956); *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960); *Burns v Van Laan,* 367 Mich 485; 116 NW2d 873 (1962); *Currie v Fiting,* 375 Mich 440; 134 NW2d 611 (1965); *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965); *Reisig v Klusendorf,* 375 Mich 519; 134 NW2d 634 (1965); *Wilson v Modern Mobile Homes, Inc,* 376 Mich 342; 137 NW2d 144 (1965); *Mosier v Carney,* 376 Mich 532; 138 NW2d 343 (1965); *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970).

protection, in a word, companionship".[16] No longer
were damages for wrongful death tied strictly to
lost wages or financial support. There was now
recognition that the life of a deceased might have
been intrinsically valuable to others besides the
deceased, although the extent and nature of that
value awaited further judicial clarification.

### D

In his dissent in *Heider v Michigan Sugar Co,*
375 Mich 490, 510; 134 NW2d 637 (1965), Justice
Adams explained his views on the meaning and
extent of "pecuniary injury" suffered by the family
of two young brothers, James and David, who
drowned in the defendant's pond. Although the
majority disposed of the case on a finding of no
liability, Justice Adams' disagreement led him to
discuss the measure of damages. Joined by Justices
T. M. Kavanagh and Souris, he found a right to
seek recovery for loss of society and companion-
ship on behalf of siblings and grandparents, de-
spite the survival of the boys' parents. He wrote:

"*MacDonald v Quimby* is applicable yet to the extent
that it was there held, by all members of the Court,
that the persons whose 'pecuniary injury' is compensa-
ble under the death act are those who, in the variant
circumstances of intestate succession, might be entitled
to inherit the personal property of one dying intestate.

\* \* \*

"The restriction of the class to Donald Heider, father
of James D. Heider, by the trial judge was improper,
since, in this case, there were other members of the
class who should have been considered.

\* \* \*

---

[16] "We are," wrote Justice Talbot Smith for the *Wycko* majority,
"restricting the losses to pecuniary losses, the actual money value of
the life of the child". 361 Mich 340.

"Since the court did not make an award to cover the pecuniary injury to all of James' next-of-kin, it will be necessary to remand the case for a reconsideration of such award.

"Some further comment is appropriate with regard to the assessment of damages which the trial judge did make. He awarded $10,989.65 for the cost of raising James. The sum was incorrectly allocated to Donald Heider, father of James, who did not provide such cost. It should have been allocated to James D. Heider's grandfather, who incurred the cost, and who, being within the statutory class, would be entitled to recover.

\* \* \*

"The loss of companionship in David's case runs not only to the father and mother but also to a younger brother and sister." 375 Mich 513-515.

These statements, although expressed in dissent, are the only recorded observations by a member of this Court addressed to the issue of the validity of a claim for damages by a relative other than *nearest* of kin in a wrongful death action. Justice ADAMS' analysis, albeit in dissent, is enlightening to us in ascertaining the meaning of "the class who \* \* \* would be entitled to inherit \* \* \* had [decedent] died intestate", but its more important significance is in the fact that some of Justice ADAMS' views were promptly adopted by the Legislature, as will be seen below.

The majority in *Breckon* limited *Wycko* to its facts and held that *Wycko* did not authorize an expanded interpretation of "pecuniary injury" which would include loss of society and companionship. Justice ADAMS, again in dissent, discussed the history of wrongful death legislation both before and after *Wycko* and concluded:

"The legislature was familiar with the opinions of this Court dealing with the recovery of damages in

cases of wrongful death and the manner of distribution
to surviving spouse and next of kin when it had under
consideration in 1960 a bill calling for a revised judica-
ture act. The fact that a substitute provision was re-
jected and the existing provisions retained in the
wrongful death section as enacted in the Revised Judi-
cature Act of 1961 with subsequent amendment in 1965
shows more than passive acquiescence in the Court's
interpretations of the statutes. It shows actual re-enact-
ment of the statutes after this Court's interpretive
opinions had been published for a sufficient time to
permit their consideration by the members of the legis-
lature, as well as by the bench and bar." 383 Mich 298.

In the course of his *Breckon* dissent, Justice
ADAMS twice made reference to what he had said
in *Heider* and once made reference to Justice
BLACK's concurrence[17] in *MacDonald* in an effort to
support his belief that the Legislature was aware
of the view that "pecuniary injury" had evolved in
meaning to encompass loss of society and compan-
ionship attributable to potential intestate heirs.

Legislative reaction to the *Breckon* opinions,
majority and dissenting, was swift and decisive
and is embodied in 1971 PA 65, now codified in
MCL 600.2922; MSA 27A.2922, the statutory provi-
sion presently at issue. The major revision, which
can only be viewed as a clear rejection of the
*Breckon* majority's limited interpretation of "pecu-
niary injury", was to delete the term "pecuniary
injury" in § 2922, and add "loss of society and
companionship".

In thus addressing an aspect of the wrongful
death act which had divided this Court for over ten
years,[18] the Legislature vindicated at least that
part of Justice ADAMS' *Breckon* dissent which

---

[17] *Breckon, supra,* 383 Mich 289-290, 294, 295-296.
[18] See fn 13.

argued legislative acquiescence in the judicially announced view

"that life has value not only to the person who has been deprived of its enjoyment by a wrongful death but to the spouse and next of kin who have lost those benefits of association we summarize in the word 'companionship' ". 383 Mich 299.

We are not inclined to the view that in explicitly adopting the lost companionship measure of damages long accepted and advanced by Justice AD-AMS, the Legislature at the same time rejected the Justice's intimately related view that such lost companionship could run to any potential, as opposed to actual, intestate heir.

We note that since the 1939 death act amendments there cannot be found any clear statement from any Justice of this Court which would preclude a potential intestate heir, who is not nearest of kin to the deceased, from seeking to recover damages, provided that that potential heir had suffered a compensable "pecuniary injury" or now, lost "companionship". On the contrary, Justice BLACK, in his concurrence in *MacDonald,* and Justice ADAMS in his unopposed views expressed in his dissent in *Heider* and reaffirmed in his dissent in *Breckon,* were clearly of the mind that such potential intestate heirs constituted the "class" entitled under the statute to prove a compensable loss. Furthermore, we think that in *Smith v Detroit,* 388 Mich 637, 649; 202 NW2d 300 (1972), by explicitly adopting the whole of Justice ADAMS' dissent in *Breckon* as the correct statement of law in Michigan, this Court at least implicitly accepted his view that the wrongful death statute, in seeking to compensate for lost "companionship",

speaks to all those extended family members iden-
tified in our intestacy provisions.

## E

Given the fact that there is no record of legisla-
tive debate on the subject, we acknowledge a mea-
sure of uncertainty as to the specific intention, if
any, of the Legislature concerning the meaning of
the term "class" as it appears in § 2922. We can-
not say with absolute certainty that the Legisla-
ture has consciously acquiesced in the interpreta-
tion of the "class" we have attributed to *Mac-
Donald,* especially in light of the more restricted
interpretation given *MacDonald* by the Court of
Appeals panel in this case. Nevertheless, because
every Justice of this Court who has expressed
himself on the issue has interpreted the "class"
language of § 2922 as encompassing potential in-
testate heirs, because none of those judicial state-
ments has ever been expressly opposed by any
Justice of the Michigan Supreme Court, because
the Legislature has never undertaken to "clarify"
the meaning of the "class" despite ample opportu-
nity to consider the apparently prevailing and
historic judicial view, and because the Legislature
in 1971 expressly adopted a measure of damages
(lost society and companionship) for wrongful
death advocated by Justice ADAMS, a measure that
he felt was inextricably bound to a broad interpre-
tation of the "class", we are satisfied that the
interpretation which we have given to § 2922 is
within the intendment of the Legislature, if indeed
it has given any thought to the matter at all.

## II

As a final matter, and apart from the inferences
to be drawn from the judicial and legislative his-

tory of § 2922, we do not think it was the intention of the Legislature to arbitrarily restrict the right to seek compensation to actual heirs at law and nearest of relatives while expanding the measure of damages to lost companionship. To do so would make the vagaries of familial survival the touchstone of recovery instead of the loss of the society and companionship which ordinarily exists among family members and, generally, to an even greater degree among more closely related individuals.[19]

Instead, we are convinced that the boundary we recognize today, establishing the right to seek compensation for the wrongful death of another, is in accord with the probable legislative judgment concerning human relationships inherent in our intestate succession laws. Those laws presume, as indeed is generally established by common experience, that certain intrafamily relationships are stronger than others and seek to distribute intestate property accordingly. There exists here an

---

[19] As the Court of Appeals in *Scott v Burger King Corp*, 95 Mich App 694, 703-704; 291 NW2d 174 (1980), pointed out:

"Consider the case of a decedent who lived with and supported his sibling for many years. If this decedent happened to have a child, the sibling would have no rights under the act, according to the *Crystal* Court. Yet it would be abundantly clear that the sibling, and possibly the child as well, would have suffered a loss. In a similar situation in which no child existed, the sibling could recover. Such a result would be nothing more than capricious and we cannot believe it was intended by the Legislature."

In similar fashion, under the Court of Appeals approach in this case, had Ms. Hubbard's parents died the day before she did there would be no question as to her siblings' right to seek recovery. If the intent (as it clearly is) is to compensate for the wrongful destruction of certain relationships by permitting recovery for loss of society and companionship, it would be adventitious to permit her parents, but prevent her siblings, from recovering on Monday for her wrongful death and, on the other hand, permit her siblings to recover on Tuesday provided she lived that extra day and her parents predeceased her. The nature of the loss to her siblings is no different on Monday than it is on Tuesday. Yet, under the Court of Appeals approach, the intervening death of her parents would make a complete difference.

assumption that *some* positive relationship exists between almost all relatives. The wrongful death act, with its emphasis on compensating lost companionship, appears designed to compensate for the destruction of family relationships—those implicitly assumed to exist by our intestacy laws among family members identified as potential intestate takers.

It may be true that in individual cases it may seem arbitrary to permit recovery for lost companionship where one's close relative is wrongfully killed but to preclude recovery where one's equally close friend is wrongfully killed. It may have appeared to the Legislature that a boundary line drawn to distinguish between friends and relatives is considerably more logical than one drawn to distinguish between subclasses of family members recognizing only the nearest of kin as likely to suffer sufficiently from a decedent's wrongful death to entitle them to damages. Limiting the right to recover for lost relationships only to relatives included in our laws of descent and distribution is a logical reflection of the natural ordering of emotional, psychological, creedal, intellectual, and economic sharing upon which strong relationships are built and which is considered common to our society. The natural distinction between "family", *i.e.,* relative, and non-family affords additional weight to our view that the Legislature intends to permit more than the nearest of kin to seek recovery.

Accordingly, the decision of the Court of Appeals is reversed.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

COLEMAN, C.J. *(for affirmance).* The issue in this case is whether the decedent's brothers and sisters were entitled to damages for loss of society and companionship under the wrongful death statute, MCL 600.2922; MSA 27A.2922. The pertinent part of that statute provides:

"The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased. *Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.* The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto." MCL 600.2922(2); MSA 27A.2922(2). (Emphasis added.)

Because the decedent was survived by a spouse and both parents, the brothers and sisters would not have been entitled to inherit any personal property under the intestate laws.[1] Under the unambiguous language of the statute, I believe

[1] The statute applicable at the time of decedent's death was MCL 702.93; MSA 27.3178(163). Our present intestate statutes provide:

"The intestate share of the surviving spouse shall be 1 of the following:

"(a) If there is not a surviving issue or parent of the decedent, the entire intestate estate.

"(b) If there is not a surviving issue but the decedent is survived by at least 1 parent the first $60,000.00, which shall be reduced in case of partial intestacy by any amount given the spouse by will, plus 1/2 of the balance of the intestate estate.

"(c) If there are surviving issue all of whom are issue of the surviving spouse also, the first $60,000.00 plus 1/2 of the balance of the intestate estate.

"(d) If there are surviving issue, 1 or more of whom are not the issue of the surviving spouse, 1/2 of the intestate estate." MCL 700.105; MSA 27.5105.

"The part of the intestate estate not passing to the surviving spouse under section 105 or the entire intestate estate if there is not a surviving spouse, shall pass as follows:

"(a) To the issue of the decedent. If they are all in the same degree

this ends our inquiry—the brothers and sisters are not within the class identified by the statute.

Our colleague concludes, however, that in any wrongful death action every brother, sister, grandparent; grandchild, aunt, uncle, nephew, niece, and cousin, give or take a few,[2] will be entitled to

---

of kinship to the decedent they shall take equally, but if of unequal degree, then those of more remote degrees take by representation.

"(b) If there is no surviving spouse, to his or her surviving parents equally.

"(c) If there is no surviving issue or parent, to the brothers and sisters and children of deceased brothers and sisters of the decedent. If they are all in the same degree of kinship to the decedent they shall take equally, but if of unequal degree, then those of more remote degree take by representation.

"(d) If there is no surviving issue, parent, brothers or sisters, or children of deceased brothers and sisters of a decedent, but the decedent is survived by 1 or more grandparents or issue of grandparents, 1/2 of the estate shall pass to the surviving paternal grandparents, or to the issue of the paternal grandparents if both are deceased, the issue to take equally if they are all of the same degree of kinship to the decedent, but if of unequal degree then those of more remote degree shall be excluded; and the other 1/2 shall pass to the maternal relatives in the same manner; but if there is no surviving grandparents or issue of grandparents on the paternal or maternal side, the entire estate shall pass to the relatives on the other side in the same manner as the 1/2.

"(e) If an eligible survivor is not then known or determinable to take under subdivisions (a) to (d), then to the state by escheat." MCL 700.106; MSA 27.5106.

[2] The class of persons that our colleague would recognize as entitled to prove damages under the wrongful death statute is described as "potential intestate heirs". The meaning to be attached to this phrase is subject to uncertainty. It has at least two alternative meanings. First, it could describe anyone *actually* identified in *any* provision of the intestate laws at the time of decedent's death. Secondly, it could mean anyone who *might have been* identified by *any* provision of the intestate laws at the *time of decedent's death*. The difference arises because of the definition of "issue" applicable to the intestate provisions. Issue is defined as "all of the person's lineal descendants of all generations, except those who are descendants of a living descendant". MCL 700.7(6); MSA 27.5007(6). Under the former possible definition of "potential intestate heir", a grandchild of the deceased would not be within the meaning of issue in the intestate act, and hence not a "potential intestate heir", if his or her parent—the one who was a child of the decedent—was still alive. Similarly, a cousin would be excluded if the cousin's parent or grandparent—the relatives of the decedent—were still alive. Under the second possible definition of "potential intestate heirs" both of these relatives would

testify to the society and companionship that they shared with the deceased and have the trier of fact determine a dollar value for their loss. This is more than the language of the statute will bear. While this conclusion does find support in the reasoning of *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957), that decision appears to be clearly erroneous and should be overruled. Before considering *MacDonald,* and the arguments our colleague advances in its behalf, a brief summary of the pertinent legislative history and prior case law is necessary.

## I

The common law had no cause of action for wrongful death. *Hyatt v Adams,* 16 Mich 180 (1867). Although the reasons for the common-law rule were not always clearly articulated, Justice CHRISTIANCY attributed the rule to a "natural and almost universal repugnance among enlightened nations to setting a price upon human life, or any attempt to estimate its value by a pecuniary standard". 16 Mich 191. Statutory remedies, however, were created, the repugnance perhaps being tempered by the need to encourage safety on the part of those to whom individuals were increasingly being required to entrust their lives—because of new modes of travel and business—and by the desire to provide relief to close family members in cases of hardship. 16 Mich 192.

The original wrongful death act in Michigan was enacted in 1848 and provided that any recovery for pecuniary loss would be

be included within the class of those eligible for damages, because their parents might have died prior to the decedent.

"for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate". 1848 PA 38.

See *Breckon v Franklin Fuel Co,* 383 Mich 251, 281; 174 NW2d 836 (1970) (ADAMS, J., *dissenting).*[3] This provision was amended in 1873 to provide that

"the amount recovered in every such action, shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate." 1873 PA 94.

This amendment allowed a husband an opportunity to seek a recovery for the death of a wife. The husband, not being a next of kin because the husband was not a blood relative of the wife, was precluded from seeking any recovery under the 1848 act. *Hyatt,* 16 Mich 195. This portion of the statute remained unchanged until after this Court's decision in *In re Venneman's Estate,* 286 Mich 368; 282 NW 180 (1938).

In *In re Venneman's Estate,* a widow had obtained a settlement of $4,000 for the pecuniary loss she suffered as a result of the wrongful death of her husband. An adult son of the deceased from a former marriage, who admitted suffering no pecuniary loss from the death of his father, sued the widow for one half of the $4,000. He claimed that the wrongful death act required that such settlement be distributed according to the laws of intestate succession, and that under such laws he was entitled to one half of the decedent's estate.

---

[3] Overruled in *Smith v Detroit,* 388 Mich 637, 651; 202 NW2d 300 (1972).

The statute, part of which was quoted above, provided:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and the amount recovered in every such action, shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered." 1929 CL 14062.

Despite the Court's apparent reservations concerning the wisdom of this legislative scheme, it considered the statute clear in providing that the persons entitled to recovery and the proportions which they would receive were to be calculated solely according to the intestate laws despite the fact that the amount of the total recovery was dependent upon a showing of pecuniary loss. The injustice which the Court sensed was clear: the pecuniary loss was solely the widow's, but the recovery for that loss had to be shared equally with a son who suffered no loss.

After the *Venneman's Estate* decision, the Legislature amended the statute changing, *inter alia,* the manner in which any recovery would be distributed. The amended statute provided in pertinent part,

"That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of

kin who suffered such pecuniary injury and in proportion thereto." 1939 PA 297.

This portion of the statute has remained unchanged except that under the present statute recovery is not limited to pecuniary injury but may also be obtained for "the loss of the society and companionship of the deceased". MCL 600.2922(2); MSA 27A.2922(2).

## II

In *MacDonald v Quimby,* 350 Mich 21; 85 NW2d 157 (1957), the case most pertinent to the present case, the Court was required to determine whether under the 1939 act the mother of the decedent, who had been supported by the decedent, was entitled to damages for her son's wrongful death. Because the decedent had a wife and children who survived him, his mother was not an heir under the laws of intestate succession. The Court concluded that the term "next of kin" as used in the statute was not confined to those who would be entitled to inherit under the intestate laws:

"We cannot agree with appellees' contention that 'heirs at law and next of kin are synonymous terms,' or that for this Court to rule otherwise would delete and make inoperative the words found in the first half of the amended section 'that such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate.'

"The petitioning mother was of a class who would be entitled to inherit the personal property of the deceased had he died intestate. The fact that she would not inherit if he died intestate leaving a wife and children would not eliminate her from that class.

"There is no ambiguity in the words of the statute which provide 'the amount recovered in every such action for pecuniary injury resulting from such death *shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereof.'* [Emphasis in original.]

"Nor is there ambiguity in the provision that 'the judge before whom such case was tried * * * shall certify to the probate court * * * the amount thereof representing the total pecuniary *loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person.'* [Emphasis in original.]

"The amendment was brought about because of the *Venneman* decision, *supra,* which brought into focus the injustice of taking from the surviving wife part of the damages collected and dividing said damages with a son of the deceased by a former marriage who did not suffer pecuniary damages because of the tortious act.

"It is impossible for the writer of this opinion to conclude that in meeting such injustice the legislature created another injustice—namely, to hold blameless, as far as damages are concerned, one who brought to his death a son who was contributing to the support of his mother. Neither can we justify the statement in defendants' answer to the mother's petition to intervene that she had no such right because she 'is not included among that class of persons entitled to recover for pecuniary injuries resulting from the wrongful death of plaintiff's decedent." 350 Mich 32-33.

Although the Court concluded that the phrase "next of kin" as used in the statute was not limited to the actual heirs under the laws of intestate succession, it did not determine whether "next of kin" included all blood relatives, see 350 Mich 34 (BLACK, J., *concurring),* or only those within the nearest degree under the civil-law meaning of the term. See 350 Mich 31-32. Under

either alternative the mother would have been "next of kin" to the deceased.[4]

The error committed by the *MacDonald* Court was that of removing the phrase "next of kin" from its context, hence ignoring the fact that the statute was not using a phrase that required judicial definition. As is obvious from the context, the "surviving spouse and next of kin" as referred to in the statute are those in a clearly delineated class: "Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate." The language of the statute leaves no room for doubt. Anyone not "entitled to inherit the personal property of the deceased had he died intestate" is not within the class. The mother in *MacDonald* was not within this class. Under the laws of intestacy, the decedent's wife and children were the only ones entitled to inherit the personal property of the deceased. In two unexplained sentences, however, the Court ignored the clear statutory language:

"The petitioning mother was of a class who would be entitled to inherit the personal property of the deceased had he died intestate. The fact that she would not inherit if he died intestate leaving a wife and children would not eliminate her from that class." 350 Mich 32.

Because the deceased did in fact leave a wife and children, the Court was interpreting the class to include those who might, under some other conceivable set of circumstances, have taken by the

[4] The Court of Appeals concluded that the civil-law meaning of the term "next of kin" should be applied. Because the degree of kinship between decedent and her brothers and sisters was not as close as the degree of kinship between the decedent and her parents, the Court of Appeals held that the brothers and sisters were not entitled to damages. *Crystal v Hubbard,* 92 Mich App 240; 285 NW2d 66 (1979).

laws of intestacy. Certainly, the statutory language defining the class as those who *would be entitled to inherit * * * had he died intestate*" gives no reason to suppose that it is referring to anything but the actual situation existing at the time of decedent's death.

The focus of the *MacDonald* Court was on the phrase "next of kin", which is used in the statute several times after the identification of the class entitled to damages. The Court put the cart before the horse when it considered whether the meaning of "next of kin" was synonymous with heirs at law prior to identifying the constituency of the class entitled to damages. Given a class identified in the statute as those entitled to inherit under the laws of intestacy, it was sensible for the statute in the next sentence to refer to the constituency of the class as "surviving spouse and next of kin". Anyone entitled to inherit if the decedent had died intestate would be either a surviving spouse or next of kin, regardless what definition one attached to next of kin. One sentence refers to *who* will receive and the next to the *amount* to be apportioned.

The reasonableness of the Legislature's reference to the class it had created as "surviving spouse and next of kin" is shown by the use of the term "next of kin" in an identical way in the original wrongful death act in Michigan. It provided, as previously noted, that any damages would be

"for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate". 1848 PA 38.

The statute clearly allows damages to be distrib-
uted only to those entitled to inherit under the
laws of intestacy and this group, apart from the
widow, is merely designated as next of kin. What
precise meaning "next of kin" might have was not
an issue under the 1848 act and is not an issue
under the present act because in both instances
the phrase is merely used as a label for a class
explicitly identified elsewhere in the act.

In *MacDonald,* the Court also looked to the
legislative action following *Venneman, supra,* as
supporting its statutory interpretation. The injus-
tice present in *Venneman,* however, to which the
Legislature responded, was not that the class of
those entitled to damages was too small, but
rather that it was too large—it included a son
who, though suffering no pecuniary loss, was enti-
tled to an equal share of the loss suffered by the
widow. Of the amendment following *Venneman,*
the *MacDonald* opinion stated that it was impossi-
ble to conclude that in correcting the injustice
present in *Venneman,*

"the legislature created another injustice—namely, to
hold blameless, as far as damages are concerned, one
who brought to his death a son who was contributing to
the support of his mother". 350 Mich 33.

While one may certainly be sympathetic to the
view that it would be kind to provide compensa-
tion to the mother in such a situation, it was
inaccurate to say that by the amendment follow-
ing *Venneman* "the legislature created another
injustice". There was no common-law cause of
action for wrongful death, and all of the legislative
enactments prior to the 1939 act were expressly
conditioned on one's being entitled to inherit un-
der the laws as if the deceased died intestate.

Thus, the most that one could say concerning the 1939 amendment was that it could have gone further, so as to assure that a dependent mother was provided for in the circumstances present in *MacDonald.* Nevertheless, whether a clearly delineated class of beneficiaries of the act should be expanded to include other deserving beneficiaries is a matter for legislative, not judicial, determination.

### III

Our colleague advances essentially two reasons, besides those articulated in *MacDonald,* why the *MacDonald* decision should be followed.[5] The first is that the Legislature has seemingly acquiesced in *MacDonald.* The second is that he cannot attribute such a "unjustifiably arbitrary purpose" to the Legislature as that of limiting recovery to actual heirs at law. Neither of these reasons, however, is convincing.

### A

Since *MacDonald,* the legislative changes in the wrongful death act have been few. 1939 PA 297,

[5] Although not really in the form of an argument, our colleague also asks:

"Does the statute itself establish the class? In other words, should the language be interpreted as establishing, at the time of enactment, a class of persons * * * who, under the countless varying possibilities which might exist in the future at the time of a decedent's wrongful death, would be eligible to inherit under Michigan's intestacy laws?"

Although it is not clear to me what the implications of this suggestion might be, it needlessly throws confusion into an otherwise seemingly clear legislative enactment. Why should the date of enactment of a statute be significant in determining the class of people to be benefited thereby? Surely, it would not be plausible to assert that persons born after this statute was enacted (or re-enacted or amended?) were not to be entitled to any wrongful death damages. The only reasonable date for forming the pertinent "class" is the date of decedent's death.

the act as it existed at the time of the *MacDonald* decision, remained unchanged until editorial changes were made when it was re-enacted as § 2922 of the Revised Judicature Act of 1961. 1961 PA 236; see *Breckon, supra,* 383 Mich 294 (ADAMS, J., *dissenting).* In 1965, the last sentence of the act was amended. 1965 PA 146; see *Breckon,* p 294. An amendment allowing for damages for the loss of the society and companionship of the deceased was enacted following the *Breckon* decision. 1971 PA 65.

Was the Legislature endorsing the 1957 *Mac-Donald* decision when it left unchanged the statutory language construed in that decision in the later re-enactment and amendments of the statute? One can only speculate. We, however, are not inclined to the view that legislative inaction concerning one clearly erroneous statutory construction decision should be treated with the same deference as that accorded legislative enactments. Therefore, we conclude that *MacDonald* should be overruled.

However, even under the reasoning of our colleague that the nonalteration of the pertinent portion of the statute shows acquiescence in the *MacDonald* decision, that acquiescence should not be assumed to apply beyond the specific holding of that case. One should not conclude that legislative inaction constitutes an endorsement of all the reasoning and ramifications of the reasoning contained in a judicial interpretation of a statute. This is especially true with respect to the *Mac-Donald* decision for two reasons. First, because the opinion left open the possibility that "next of kin" would be defined according to its civil-law definition, the opinion cannot be read as clearly inform-

ing the Legislature that this Court had concluded that essentially all relatives are entitled to damages under the wrongful death statute. Secondly, because of the amendment since *MacDonald* allowing for damages for loss of society and companionship, the ramifications of my colleague's interpretation of *MacDonald* are far beyond its ramifications at the time it was decided. The decision was then limited by the statutory requirement of pecuniary injury—a requirement that would limit the beneficiaries of the wrongful death statute. Thus, because of the limited and uncertain scope of the *MacDonald* decision—both because of the possibility that "next of kin" would be given a civil-law definition and because of the pecuniary injury requirement—the opinion cannot tenably be a basis for legislative acquiescence in the broad interpretation of the statute now advocated.

## B

Our colleague also asserts that he cannot conclude that our Legislature intended to "arbitrarily restrict the right to seek compensation to actual heirs at law and nearest of relatives while expanding the measure of damages to lost companionship". To do so would be to limit recovery by the "vagaries of familial survival". (What else are the laws of descent and distribution?) He nevertheless concludes that there is a rational basis for limiting recovery to relatives, thereby excluding whatever close friends the decedent may have had who were not relatives. Essentially, then, he agrees that it is possible to draw a rational line between those who should be entitled to damages for the loss of the companionship of the decedent and those who should not, but that it is arbitrary and irrational

to draw that line at the decedent's heirs at law.
He asserts:

"The natural distinction between 'family', *i.e.,* rela-
tive, and non-family affords additional weight to our
view that the Legislature intends to permit more than
the nearest of kin to seek recovery."

The dividing line between relatives and non-rel-
atives is no more significant or rational than the
line between, for example, one's children and one's
cousins. Certainly, in most people's lives there are
friends closer than some relatives.

That some line must be drawn between those
entitled to recover damages for the lost compan-
ionship of the deceased and those not so entitled is
apparent. It is true that to allow all friends and
acquaintances of a deceased to have a jury put a
dollar value on their lost companionship would
lead to endless litigation of a potentially very
unseemly nature. There might be no end to the
number of people trying to establish a friendship
with the deceased. Petty jealousies and rivalries
would surely be highlighted by defendants seeking
to lower the monetary value of particular relation-
ships. If the common-law concern against placing a
pecuniary value on one's life has any merit at all,
its fears would be fully realized by asking juries to
establish the net worth of all of one's human
relationships.

Given the express statutory limitation that
wrongful death damages are recoverable only by
those persons entitled to inherit under the intes-
tate laws, it is not for us to question the wisdom of
failing to extend further the benefits for loss of
society and companionship. The unique nature of
damages for lost companionship makes it far more
difficult than my colleague would suggest for this

Court to assert that the clearly necessary line demarcating those entitled to such damages from those who are not, rationally should have been drawn elsewhere than where it has been drawn.[6] Whether the line should have been drawn narrowly or broadly was a question for the Legislature, and a question clearly answered by the statute we are called on to construe in this case.

## CONCLUSION

Although our predecessors must be credited with compassion in trying to fashion a means to provide wrongful death benefits for a mother outside of the laws of intestate succession, the Court's continued attempt to follow that route can predictably lead from statutes of certainty into a prickly tangle of uncertainties. One cannot underestimate the ingenuity of lawyers.

From what appears on its face to have been straightforward legislation, we would not veer into the proposed thicket. It is commendable to respect precedent, but it is foolish to compound error in so doing.

The statute now in effect retains the historic words describing the class to which distribution is intended. It added to the damages "loss of the society and companionship of the deceased" and provided that those benefits should be divided among the persons in that class—those who would

---

[6] Whether children should be entitled to damages for the loss of society and companionship of their parents is subject to dispute in our sister states. *Salin v Kloempken,* 322 NW2d 736 (Minn, 1982). But see *Berger v Weber,* 411 Mich 1; 303 NW2d 424 (1981). While our wrongful death statute clearly provides that intestate heirs are entitled to such damages, we would follow a very uncertain course to interpret our statute as applying to all potential intestate heirs.

take had the deceased died intestate—in proportion to the injury suffered.

The disposition of an estate does not allow for speculation regarding the "what ifs" of life and death as suggested. Regardless of emotional ties up and down the ladder of succession, the statutes do not permit such introspection as "What if the parents of the deceased had died a day earlier than Ms. Hubbard?", or "What if she had a child, but an aunt was especially devoted to her?"—and so on and on.

Understandably, the laws of descent and distribution are exact. They do not rest on dependency per se. They do not encompass the loss of society and companionship per se, except, as specifically carved out by the wrongful death act, the damages to be distributed in proportion to the injury to those "entitled to inherit the personal property of the deceased had he died intestate".

The Court of Appeals correctly decided that brothers and sisters of the deceased who were not entitled to inherit under the laws of intestacy are not entitled to damages for loss of society and companionship.

Affirmed.